GOVERNMENT PAYMENT SERVICE, INC., Appellant–Defendant/Counter–Plaintiff,

v.

ACE BAIL BONDS, American Bail Bond Company, Bertholet Bail Bond, and Express Bail Bond, Appellees–Plaintiffs/Counter–Defendants.

No. 49A02–0507–CV–656.

Court of Appeals of Indiana.

Oct. 11, 2006.

Mark R. Waterfill, James B. Chapman II, Dann Pecar Newman & Kleiman, P.C., Indianapolis, IN, for Appellant.

Douglas M. Grimes, Gary, IN, for Appellees.

## OPINION

KIRSCH, Chief Judge.

Government Payment Service, Inc. ("GPS") appeals the trial court's decision in favor of Ace Bail Bonds, American Bail Bond Company, Bertholet Bail Bond, and Express Bail Bond (collectively, the "Bail Agents"). Specifically, GPS appeals the trial court's decision to permanently enjoin GPS from facilitating cash bail in Indiana. GPS also appeals the trial court's denial of its counterclaim for damages. On appeal, GPS raises the following dispositive issues:

I. Whether the trial court's findings of fact and conclusions support the permanent injunction entered against GPS.

II. Whether the trial court erred in denying GPS's counterclaim for damages sustained as a result of being wrongfully enjoined or restrained.

We reverse in part and affirm in part.

## FACTS AND PROCEDURAL HISTORY[1]

GPS is an Indiana company that was incorporated in 1997 to help credit card holders access their credit in order to make payments to government agencies and small businesses. GPS has approximately 950 customers in thirty-one states, 800 of which are government agencies. This dispute arises from actions taken by GPS in connection with its contracts with Lake County, Hammond City Court, and Hobart City Court ("the Contracts"). Under the Contracts, GPS facilitated the payment of cash bail, a fine, or other fee by means of a client's credit card.

On March 27, 2003, the Bail Agents filed a "Complaint for Temporary Restraining Order, Preliminary and Permanent Injunction and Damages," claiming that GPS had tortiously interfered with the Bail Agents' business by issuing bail bonds in violation of IC 27–10–3–1.[2] On March 27, 2003, the Lake Superior Court entered a temporary restraining order ("TRO") enjoining GPS both from posting cash bail for incarcerated defendants and from advertising its services. The TRO expired April 7, 2003.

On July 7, 2003, the Lake County Superior Court granted GPS's motion to transfer venue to Marion County. Thereafter, GPS filed a counterclaim against the Bail

---

1. Oral argument was heard on this case on June 14, 2006 in Indianapolis. We commend counsel on the quality of their written and oral advocacy.

2. IC 27–10–3–1, in pertinent part, provides:

(a) A person may not act in the capacity of a bail agent or recovery agent or perform any of the functions, duties, or powers prescribed for bail agents or recovery agents under this article unless the person is qualified and licensed as provided in this article. However, none of the terms of this section shall prohibit any individual or individuals from:

(1) pledging real or other property as security for a bail bond in judicial proceedings and where the individual does not receive, or is not promised, money or other things of value; or

(2) executing any bail bond for an insurer, pursuant to a bail bond service agreement entered into between the insurer and any automobile club or association, financing institution, insurance company, or other organization or association, and on behalf of a person required to furnish bail in connection with any violation of law arising out of the use of a motor vehicle.

(b) A license:
(1) may not be issued except in compliance with this article; and
(2) may only be issued to an individual.

However, upon an affirmative showing to the commissioner in writing by an individual that the individual is an all lines fire and casualty insurance producer, a surety bail agent license shall be issued to the individual without further qualification or fee to represent an insurer the individual is licensed to represent. The individual shall be subject to and governed by laws and rules relating to bail agents when engaged in the activities of a bail agent.

Agents for damages sustained as a result of being wrongfully enjoined by the TRO. In turn, the Bail Agents filed an amended complaint on March 1, 2004, which requested the same relief as the initial complaint but sought to add Express Bail Bond, Inc. as a party and remove American Bail Bond as a party.

On July 30, 2004, GPS filed its motion for summary judgment on the Bail Agents' amended complaint. The Bail Agents responded in opposition to GPS's motion, and GPS, in turn, filed a reply in support of summary judgment. On September 30, 2004, GPS filed a motion to dismiss asking the trial court to dismiss the amended complaint based on the Bail Agents' failure to obtain leave of court to add Express Bail Bond as a party and dismiss American Bail Bond as a party.

The trial court conducted a hearing on GPS's motion for summary judgment on October 5, 2004. During that hearing, the trial court, in an effort to align the parties to the pleadings, obtained the parties' consent to keep all four Bail Agents as plaintiffs in the case. *Tr.* at 7, *Appellant's App.* at 106. This action effectively denied GPS's motion to dismiss the amended complaint and denied GPS's motion for default judgment. *Appellant's Br.* at 4. On November 18, 2004, the trial court denied GPS's motion for summary judgment. GPS then filed amended counterclaims against the Bail Agents to change the caption to include all four of the Bail Agents.

The trial court conducted a bench trial on the Bail Agents' amended complaint on December 13 and 14, 2004. On July 12, 2005, the trial court entered its judgment (1) permanently enjoining GPS from facilitating cash bail in Indiana or advertising its services, and (2) denying GPS's counterclaim for damages, attorney fees, and costs. GPS now appeals. Additional facts will be added as needed.

## DISCUSSION AND DECISION

▆▆▆ The trial court issued special findings of fact and conclusions pursuant to Ind. Trial Rule 52(A). When reviewing a judgment based on such findings, this Court must determine first, whether the evidence supports the findings, and second, whether the findings support the judgment. *Town of New Ross v. Ferretti,* 815 N.E.2d 162, 166 (Ind.Ct.App.2004); *Ratliff v. Ratliff,* 804 N.E.2d 237, 244 (Ind. Ct.App.2004). This Court may set aside findings of fact only if they are clearly erroneous. *Collections, Inc. v. Wolfe,* 818 N.E.2d 14, 16 (Ind.Ct.App.2004). Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. *Id.* In order to determine that a finding or conclusion is clearly erroneous, our review of the evidence must leave us with the firm conviction that a mistake has been made. *Id.* Here, the trial court granted a permanent injunction, which is an extraordinary equitable remedy that should be granted only with caution. *Crawley v. Oak Bend Estates Homeowners Ass'n, Inc.,* 753 N.E.2d 740, 744 (Ind.Ct.App.2001), *trans. denied* (2002).

To properly analyze the issues before this court, we must first address the nature of the claim, i.e., whether the Bail Agents are pursuing a private cause of action to enjoin GPS from violating IC 27–10–3–1 or a claim for tortious interference with a business relationship. The Bail Agents' amended complaint alleged in part: (1) GPS is engaged in the practice of charging fees to post cash bail; (2) GPS is not a licensed bail agent in the State of Indiana; (3) the actions of GPS have tortiously interfered with the business of the plaintiffs, all of whom are licensed bail agents in the State of Indiana; (4) GPS is guaranteeing the funds which are transmitted to the clerk's office within three business days which results in the release

of a person without ever having actually posted the cash or given any assurance that they will post the bail; (5) as a result of GPS's unlawful actions, plaintiffs have suffered damages; and (6) the actions of GPS are contrary to IC 27–10–3–1, which provides that only a licensed bail agent may charge a fee to post a bail bond. *Appellant's App.* at 51–52. GPS understood the claim as being one for tortious interference with business relationships.[3] When questioned at oral argument, Douglas Grimes, counsel for the Bail Agents, agreed.

## I.

■ GPS contends that the evidence does not support the findings and, in turn, the findings do not support the judgment granting a permanent injunction on a claim of tortious interference with a business relationship. This Court may set aside findings of fact if they are clearly erroneous. The elements of tortious interference with a business relationship are: (1) the existence of a valid relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from defendant's wrongful interference with the relationship. *Felsher v. Univ. of Evansville,* 755 N.E.2d 589, 598 n. 21 (Ind.2001) (citing *Levee v. Beeching,* 729 N.E.2d 215, 222 (Ind.Ct.App.2000)); *Rice v. Hulsey,* 829 N.E.2d 87, 91 (Ind.Ct.App.2005); *AutoXchange.com, Inc. v. Dreyer and Reinbold, Inc.,* 816 N.E.2d 40, 51 (Ind.Ct.App.2004). Additionally, our Supreme Court has held that "this tort requires some independent illegal action." *Brazauskas v. Fort Wayne–South Bend Diocese, Inc.,* 796 N.E.2d 286, 291 (Ind.2003), *cert. denied,* 541 U.S. 902, 124 S.Ct. 1602, 158 L.Ed.2d 244 (2004); *see also Watson Rural Water Co., Inc. v. Ind. Cities Water Corp.,* 540 N.E.2d 131, 139 (Ind.Ct.App.1989), *trans. denied* ("In the State of Indiana, an element necessary to prove this cause of action is that a defendant acted illegally in achieving his end.").

■ The first element of a cause of action for tortious interference with a business relationship is the existence of a valid business relationship. *Computers Unlimited, Inc. v. Midwest Data Systems, Inc.,* 657 N.E.2d 165, 169 (Ind.Ct.App.1995); *Comfax v. N. Am. Van Lines,* 587 N.E.2d 118, 124 (Ind.Ct.App.1992). Bail Agents contend that GPS interfered with the relationship that they and their clients had with the local governmental entities. However, there is no evidence that either Bail Agents or their clients had any such relationship. There is no evidence of a contract between the Bail Agents, their clients, and the governmental entities. There is no evidence of property or other rights held by the Bail Agents. Although Bail Agents claim that they had access to the incarcerated defendants in the jails prior to the Contracts with GPS, there is no evidence that such access was a matter of right or flowed in any way from a business relationship between the Bail Agents and the governmental entities. Similarly, there is no evidence of any consideration paid by Bail Agents for such access.

■ There is also no evidence that GPS intentionally interfered, or could interfere, with the relationship which Bail Agents claim to have had with the governmental entities. It was the governmental entities, not GPS, who adopted the cash bail pro-

---

3. Prior to trial, GPS filed a trial brief reiterating its understanding that the Bail Agents' claim alleges, "GPS is tortiously interfering with [the Bail Agents'] business in that GPS is acting as an unlicensed bail bondsman in violation of IC 27–10–3–1." *Appellant's Supp. App.* at 161.

gram. It was the governmental entities, not GPS, who restricted the access of the Bail Agents to the jails and the incarcerated defendants. Nothing in the Contracts here at issue restricts, limits, or interferes with the rights or business activities of Bail Agents in any way.

To be sure, the Bail Agents may have lost business in writing traditional bail bonds when the governmental entities adopted a cash bail system and when they entered into a contract with GPS to facilitate that program by providing credit access to incarcerated defendants. That loss results not from intentional interference by GPS, but from the choice that the governmental entities decided to give incarcerated defendants through the cash bail program.

Indiana law permits licensed bail agents to write bonds for incarcerated defendants. It also permits a cash bail program. Facilitating the access of incarcerated defendants to credit which they in turn post as cash bail is not engaging in the writing of bail bonds, and it is not tortious interference with the business relationships of the Bail Agents. The trial court erred in concluding that GPS intentionally interfered with the business relationships of the Bail Agents and in enjoining GPS from facilitating cash bail. Accordingly, we reverse the trial court's judgment and permanent injunction.[4]

## II.

On December 9, 2004, GPS filed an amended counterclaim against the Bail Agents, which requested attorney fees, costs, expenses, and damages incurred by lost business due to the TRO. *Appellant's App.* at 114–15. Citing to Trial Rule 65(C)—which suggested that GPS was su-

ing to collect on the bond maintained by the trial court as security for the TRO—the nature of GPS's counterclaim was malicious prosecution on the basis that GPS had to defend against the wrongful request for a TRO. *Id.* at 114. The trial court denied this counterclaim and granted the Bail Agents' request for a permanent injunction in the same July 12, 2005 order. *Id.* at 18. GPS contends that because GPS was wrongfully enjoined, the trial court erred in denying this amended counterclaim against the Bail Agents for damages that arose through the trial court's issuance of the TRO. GPS further contends, "upon a reversal of the trial court's permanent injunction, the Court should remand this matter to the trial court for a calculation and an award of damages pursuant to Rule 65(C)." *Appellant's Br.* at 26.

█ Where a temporary injunction is dissolved and not replaced by a permanent injunction, the enjoined party is generally entitled to compensation for the damages it incurred. *H & G Ortho, Inc. v. Neodontics Int'l, Inc.*, 823 N.E.2d 718, 733 (Ind.Ct. App.2005); *Hampton v. Morgan*, 654 N.E.2d 8, 9 (Ind.Ct.App.1995). While it is true that this TRO expired ten days after it was issued and it was not immediately replaced by a permanent injunction, the trial court eventually did grant the Bail Agents' request for a permanent injunction. The decision to deny the counterclaim was made in conjunction with that decision to grant the permanent injunction.

██ To prove malicious prosecution, GPS had to prove: (1) the Bail Agents instituted or caused to be instituted an original action against GPS; (2) the Bail Agents acted maliciously in so doing; (3) the Bail Agents had no probable cause to

---

**4.** On July 21, 2005, GPS filed Emergency Motion to Stay Enforcement of the Permanent Injunction Pending Appeal. The trial court heard oral argument on the motion to stay and took the matter under advisement on August 15, 2005. There is no evidence in the record before us that this matter was ruled on by the trial court.

institute the original action; and (4) the original action was terminated in GPS's favor. *City of New Haven v. Reichhart,* 748 N.E.2d 374, 378 (Ind.2001); *Crosson v. Berry,* 829 N.E.2d 184, 194 (Ind.Ct.App. 2005), *trans. denied.* Here, the Lake Superior Court issued the TRO in favor of the Bail Agents. On the merits, the Marion Superior Court issued a permanent injunction also in favor of the Bail Agents. Because the original action was not terminated in GPS's favor, GPS failed to prove malicious prosecution. The trial court did not err in denying GPS's counterclaim.

Reversed in part and affirmed in part.

SULLIVAN, J., and DARDEN, J., concur.