**MERIDIAN SECURITY INSURANCE COMPANY,** Appellant–Defendant/Counterclaim Plaintiff/Third–Party Counterclaim Plaintiff,

v.

**HOFFMAN ADJUSTMENT COMPANY, and Joe Hoffman, Individually,** Appellees–Third–Party Counterclaim Defendant,

**Stefo Gubic and Adele M. Gubic,** Plaintiffs/Counterclaim Defendants.

No. 45A03–0911–CV–538.

Court of Appeals of Indiana.

Aug. 18, 2010.

Charles T. Jennings, Thomas R. Haley III, Joseph A. Samreta, Jennings Taylor Wheeler & Haley, P.C., Carmel, IN, Attorneys for Appellant.

Michael F. DeBoni, Yoder, Ainlay, Ulmer & Buckingham, LLC, Goshen, IN, Elizabeth M. Dillon, O'Hagan Spencer, LLC, Chicago, IL, Attorneys for Appellees, Joe Hoffman and Hoffman Adjustment Company.

## OPINION

MATHIAS, Judge.

Meridian Security Insurance Co. ("Meridian") appeals the trial court's grant of summary judgment in favor of Hoffman Adjustment Co. and Joe Hoffman, individually (collectively "Hoffman"). Meridian argues that genuine issues of material fact exist concerning whether Hoffman, a public insurance adjuster, engaged in fraud, spoliation of evidence, and tortious interference with Meridian's business and contractual relationships with its policy holders, Stefo and Adele Gubic (hereinafter "the Gubics"). Meridian therefore argues that the trial court erred when it granted Hoffman's motion for summary judgment. We affirm.

### Facts and Procedural History

The issues presented in this appeal stem from a January 2007 fire loss at the Gubics' residence. The Gubics' homeowner's insurance policy was issued by Meridian. Meridian and the Gubics settled the construction and repair claim for the residence for approximately $200,000, but were unable to reach an agreement on the personal property claim. Soon after the fire, the Gubics moved nearly all of their damaged personal property to a pole barn. Within a few days, Meridian's adjuster, Jim Baugues, inventoried and examined the damaged property. Meridian believed that most of the Gubics' property was salvageable and made plans to have it transported for cleaning.

Shortly after the fire, the Gubics entered into a contract with Appellee Hoffman to engage his services as a public adjuster. Under the Adjuster Agreement, Hoffman was to be paid a fee of 10% of the amount the Gubics recovered from their personal property claim. Specifically, the Gubics' agreement with Hoffman provides in pertinent part:

> I (We) authorize Hoffman Adjustment Company (herein after referred to as HAC) to assist in the adjustment of my (our) loss at [address omitted], on or about January 17, 2007 and agree to pay HAC a fee of 10% when adjusted, or otherwise recovered on account of such loss, regardless of who effects the adjustment or recovery. For such service I(we) hereby assign to HAC the above amount due, or to grow by reason of such claim(s) except as follows: dwelling and loss of use. . . .

Appellant's App. p. 429. After the Gubics entered into the agreement with Hoffman, the company Meridian hired to clean the Gubics' damaged property was told not to transport the property for cleaning.

At Meridian's request, the Gubics provided an inventory of the damaged property to Meridian, but Meridian asserted that the inventory lacked required information. In response, Hoffman sent a letter to Meridian stating that the provided inventory conformed to Meridian's policy requirements. On May 22, 2007, Meridian offered to settle the Gubics' property loss claim for $32,247.25. The Gubics rejected that offer as a final settlement for their personal property claim and demanded an appraisal of their loss as provided for in their homeowners policy. Appellant's App. p. 38. Meridian refused to conduct an appraisal

and stopped paying the fees to store the Gubics' personal property. The Gubics were then required to pay $150 per month to store their damaged property.[1]

The Gubics filed a Petition for an Umpire on July, 23, 2007. One week later, Meridian deposed the Gubics, and the Gubics agreed to provide supplemental inventories. However, on August 10, 2007, Hoffman sent a letter to Meridian advising that Meridian had requested information not required by the homeowners policy, but did provide a revised inventory of the Gubics' property. Meridian attempted to schedule an inspection of the Gubics' property in September 2007, but the Gubics and Hoffman did not appear for the scheduled inspection. The damaged property was photographed and eventually disposed of at the end of September 2007.

On September 13, 2007, Meridian filed its answer to the Gubics' Petition, and also filed a Counterclaim for Declaratory Judgment. Meridian alleged that the Gubics' personal property claim was barred because they had breached the policy terms, and had waived their rights under the policy. In November 2007, after the court learned that the Gubics' property had been destroyed, the Gubics' Petition for an Umpire was denied as moot.

On December 7, 2007, the Gubics filed an amended complaint asserting a claim against Meridian for breach of contract, failure to maintain good faith in effectuating the terms of the policy, adjuster negligence, and misrepresentation by Meridian and its adjuster, Jim Baugues. In response, Meridian filed a complaint for declaratory judgment seeking a determination that the Gubics had engaged in fraudulent behavior and that Meridian had no further obligations under the policy.

Meridian's response also contained a third-party complaint against Hoffman alleging that Hoffman breached the terms of the insurance policy, failed to act in good faith, engaged in spoliation of evidence and fraud, committed unauthorized practice of law, and tortiously interfered with Meridian's business and contractual relationships with the Gubics. Meridian also alleged that Hoffman should be required to indemnify Meridian for its damages.[2] Hoffman filed a motion for summary judgment on all counts of Meridian's third-party complaint. A hearing was held on Hoffman's motion on September 29, 2009.[3]

On October 2, 2009, the trial court entered findings of fact and conclusions of law granting Hoffman's motion for summary judgment. Specifically, the trial court concluded:

All of Hoffman's activities accomplished as the Gubics' agent and as a result of the existence of the Gubics' contract with Hoffman. The Gubics can certainly be held liable for the acts of Hoffman as its principal, but Hoffman, as their agent, cannot be held liable to Meridian for negligently performing its duties un-

---

1. Because they could no longer afford to pay the storage fee, the Gubics destroyed the damaged property in September 2007.

2. Hoffman filed a counterclaim alleging that Meridian committed abuse of process, litigated in bad faith, defamed Hoffman, and intentionally interfered with his contractual relationship with the Gubics. Hoffman's counterclaim is still pending in the trial court.

3. On that date, the court also heard argument on motions for summary judgment filed by Meridian and Jim Baugues, Meridian's adjuster, and on the Gubics' cross-summary judgment motion on Meridian's counterclaims against them. In its October 2, 2009 order, the trial court granted Baugues' motion for summary judgment, but denied both Meridian's and the Gubics' motions.

der its contract with the Gubics[.] [citation omitted]. In terms of Meridian's theories of recovery of breach of contract, breach of duty of good faith and indemnification; all require a contractual relationship between Meridian and Hoffman which does not exist. Hoffman's contract was with the Gubics, not Meridian, and Meridian's policy of insurance was with the Gubics and not Hoffman and, by its own terms, was not assignable. Finally, Meridian's theories of recovery of spoliation of evidence, as an independent tort claim, unauthorized practice of law, and tortious interference with a business relationship where an agency relationship exists between the alleged tortfeasor and one of the parties to the business relationship allegedly interfered with, though novel, are not actionable under Indiana law[.] [citations omitted].

Appellant's App. pp. 24–25. Meridian now appeals.

### Standard of Review

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). Our standard of review is well settled:

> In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. The party appealing the grant of summary judgment has the burden of persuading this court

that the trial court's ruling was improper.

*Perryman v. Motorist Mut. Ins. Co.*, 846 N.E.2d 683, 687 (Ind.Ct.App.2006) (citations omitted). Furthermore, our review is not altered where a trial court enters findings of fact and conclusions of law thereon in granting a motion for summary judgment. *Decker v. Zengler*, 883 N.E.2d 839, 842 (Ind.Ct.App.2008), *trans. denied.* In such context, we are not bound by the trial court's specific findings and conclusions, although they aid our review by providing us with a statement of reasons for the trial court's action. *Id.*

### Discussion and Decision

Meridian argues that the trial court erred when it granted summary judgment because there are genuine issues of material fact concerning whether Hoffman engaged in fraud, spoliation of evidence, and tortious interference with Meridian's business and contractual relationships with the Gubics. Hoffman responds that Meridian's claims against him are not actionable under Indiana law because he had no contractual relationship with Meridian and in his capacity as a public adjuster, he was acting as the Gubics' agent. Hoffman further asserts that Meridian's claims are simply coverage defenses, which Meridian can and has raised against the Gubics in the pending litigation.

Initially, we observe that Indiana Code section 27–1–27–1 defines the role of public adjusters and provides in pertinent part:

> (a) The term "public adjuster" shall include every individual or corporation who, or which, for compensation or reward, renders advice or assistance to the insured in the adjustment of a claim or claims for loss or damages under any policy of insurance covering real or personal property and any person or corporation who, or which, advertises, solicits

business, or holds itself out to the public as an adjuster of such claims. However, no public adjuster shall:

> (1) act in any manner in relation to claims for personal injury or automobile property damage; or
>
> (2) bind the insured in the settlement of claims.

Ind.Code § 27–1–27–1 (2003 & Supp.2009).

■■■ By entering into the adjuster agreement with Hoffman, the Gubics employed Hoffman to act as their agent for the purpose of assisting them with the adjustment of their personal property claim. "Agency is a relationship resulting from the manifestation of consent by one party to another that the latter will act as an agent for the former." *Smith v. Brown*, 778 N.E.2d 490, 495 (Ind.Ct.App.2002). Our supreme court has explained that a "principal is bound by the acts of a general agent if the agent acted within the usual and ordinary scope of the business in which it was employed, even if the agent may have violated the private instructions the principal may have given it." *Koval v. Simon Telelect, Inc.*, 693 N.E.2d 1299, 1304 (Ind.1998). Further, "[a]n agent is not liable for harm to a person other than his principal because of his failure adequately to perform his duties to his principal, unless physical harm results from reliance upon performance of the duties by the agent, or unless the agent has taken control of land or other tangible things." *Greg Allen Const. Co., Inc. v. Estelle*, 798 N.E.2d 171, 174 (Ind.2003) ("An agent is not liable for economic loss to anyone except his principal."). With these principles in mind, we examine Meridian's claims against Hoffman.

## I. Meridian's Tort and Contract Claims

A. *Meridian's Claims for Tortious Interference with its Business and Contractual Relationships with the Gubics*

■■ To establish that Hoffman committed these torts, Meridian would have to prove that Hoffman intentionally interfered with Meridian's and the Gubics' business relationship[4] and that Hoffman intentionally induced breach of the contract between Meridian and the Gubics.[5] *See Melton v. Ousley*, 925 N.E.2d 430, 440 (Ind.Ct.App.2010); *Government Payment Serv., Inc. v. Ace Bail Bonds*, 854 N.E.2d 1205, 1209 (Ind.Ct.App.2006), *trans. denied* (citing *Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 598 n. 21 (Ind.2001)). But as the Gubics' agent, Hoffman's actions in attempting to adjust the Gubics' personal property damage claim are imputed to the Gubics. The Gubics cannot tortiously in-

---

**4.** To establish a claim of tortious interference with a business relationship, the plaintiff must show (1) the existence of a valid relationship; (2) defendant's knowledge of the existence of the relationship; (3) defendant's intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from the defendant's wrongful interference with the relationship. *Government Payment Serv., Inc. v. Ace Bail Bonds*, 854 N.E.2d 1205, 1209 (Ind.Ct.App.2006), *trans. denied* (citing *Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 598 n. 21 (Ind.2001)). Additionally, our Supreme Court has held that "this tort requires some independent illegal action." *Brazauskas v. Fort Wayne–South*

Bend Diocese, Inc., 796 N.E.2d 286, 291 (Ind. 2003).

**5.** The elements of an action for tortious interference with a contract are: (1) the existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach. *Melton*, 925 N.E.2d at 440 (citing *Levee v. Beeching*, 729 N.E.2d 215, 221 (Ind. Ct.App.2000)).

terfere with their own business relationship or their own contractual relationship with Meridian. *See Greg Allen Const.,* 798 N.E.2d at 175 ("[A] party to a contract or its agent may be liable in tort to the other party for damages from negligence that would be actionable if there were no contract, but not otherwise."); *Trail v. Boys & Girls Clubs of Northwest Ind.,* 845 N.E.2d 130, 138 (2006) ("A party cannot' interfere' with its own contracts, so the tort itself can be committed only by a third party."). Moreover, if Hoffman failed to adequately perform his duties to the Gubics as described in the adjuster agreement and Indiana Code section 27–1–27–1, as their agent, he is liable only to his principals. *See Greg Allen Const.,* 798 N.E.2d at 174.

### B. *Fraud*

█ Meridian also argues that a question of material fact exists as to whether Hoffman committed actual and constructive fraud. Specifically, Meridian claims that Hoffman committed actual fraud by stating that the Gubics' property would be disposed of when in fact the property had already been destroyed.[6] Meridian also argues that Hoffman committed constructive fraud by refusing to allow inspection of the Gubics' damaged property, refusing to provide information as required under the homeowner's insurance policy, failing to protect the damaged property and destroying the property, failing to cooperate with Meridian, and failing "to prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of the loss." Appellant's Br. at 25.

Once again, Meridian is attempting to claim that Hoffman is personally liable to Meridian for actions he has undertaken as the Gubics' agent. Under the terms of the homeowner's policy, the Gubics were required to:

4. Protect the property from further damages. If repairs to the property are required, you must:

   a. Make reasonable and necessary repairs to protect the property; and

   b. Keep an accurate record of repair expenses;

5. Cooperate with us in the investigation of a claim;

6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

7. As often as we reasonably require:

   a. Show the damaged property;

   b. Provide us with records and documents we request and permit us to make copies; and

   c. Submit to examination under oath, while not in the presence of another "insured", and sign the same[.]

Appellant's App. p. 377. If Hoffman, acting as the Gubics' agent, committed the acts alleged by Meridian, and if those acts were proved to violate the terms of the policy, then Meridian can raise its claims as coverage defenses against the Gubics in the action that remains pending in the trial court, and, we might add, has already done so.

**6.** Even if Hoffman's statement was proven to be false, Meridian has not designated any evidence that would establish that its reliance on Hoffman's alleged misrepresentation as to the date the Gubics' property was actually destroyed proximately caused an injury to Meridian. *See Ruse v. Bleeke,* 914 N.E.2d 1, 10 (Ind.Ct.App.2009) (listing the elements of actual fraud).

### C. Breach of Contract and Duty of Good Faith

■ Hoffman's insulation from Meridian as the Gubics' agent also precludes the existence of genuine issues of material fact concerning whether Hoffman breached a contract and failed to act in good faith.[7] Any acts Hoffman performed on the Gubics' behalf are imputed to the Gubics, and if the Gubics or its agent violated the policy terms, Meridian can raise its claim as a coverage defense against the Gubics. Additionally, "Indiana law has long recognized that there is a legal duty implied in all insurance contracts that the *insurer deal in good faith* with its insured." *Allstate Ins. Co. v. Fields*, 885 N.E.2d 728, 732 (Ind.Ct.App.2008), *trans. denied* (emphasis added). Indiana has never recognized a reciprocal duty that an insured (or his or her agent) deal in good faith with an insurer, precisely for the reason that an insurer may deny a homeowner's claim under the policy if the homeowner violates its terms.

### D. Damages

Moreover, with regard to all of these claims against Hoffman, we observe that Meridian has not alleged that it has incurred any compensable damages. Generally, "[t]he determination of damages is a question of fact[.]" *Bennett v. Broderick*, 858 N.E.2d 1044, 1051 (Ind.Ct.App.2006), *trans. denied*. Meridian claims that Hoffman's actions during Meridian's attempts to adjust the Gubics' property damage claim "forced Meridian to incur additional expenses during the claims process," including costs and attorney fees "associated with this litigation." Appellant's Br. at 40.

■ Indiana adheres to the "American Rule" with respect to the payment of attorney fees, which requires each party to pay his or her own attorney fees absent an agreement between the parties, statutory authority, or rule to the contrary. *Fackler v. Powell*, 891 N.E.2d 1091, 1098 (Ind.Ct.App.2008). Meridian's alleged damages consist solely of costs and attorney fees and it has not established a contractual or statutory entitlement to attorney fees for the claims alleged against Hoffman so as to prevent application of the "American Rule."[8]

## II. Spoliation of Evidence

■ Finally, we address Meridian's argument that it may bring an independent claim of spoliation of evidence against Hoffman. Spoliation of evidence is "'the intentional destruction, mutilation, alteration, or concealment of evidence.'" *Cahoon v. Cummings*, 734 N.E.2d 535, 545 (Ind. 2000) (quoting Black's Law Dictionary 1409 (7th ed. 1999)). If spoliation by a party to a lawsuit is proved, rules of evidence permit the jury to infer that the missing evidence was unfavorable to that party. *Id.* "Indiana common law does not recognize an independent cause of action for either intentional or negligent 'first-party' spoliation of evidence, i.e. spoliation by a party to the underlying claim." *Glotzbach v. Froman*, 854 N.E.2d 337, 338

---

7. Meridian also argues that Hoffman is an assignee of the Gubics' homeowner's insurance policy because under the Adjuster Agreement, Hoffman will receive as compensation 10% of any recovery of the Gubics' personal property claim. We disagree. The Adjuster Agreement does not identify Meridian as the insurer or contain any language purporting to convey any rights or obligations under the policy to Hoffman. Further, the policy language specifically prohibits assignment unless Meridian consents to such assignment in writing. *See* Appellant's App. p. 386.

8. For this reason, we do not address Meridian's specious argument that it is entitled to be indemnified for the alleged damages sustained as a result of Hoffman's actions.

(Ind.2006) (citing *Gribben v. Wal–Mart Stores, Inc.*, 824 N.E.2d 349, 355 (Ind. 2005)).

Meridian argues that it may pursue an action for spoliation against Hoffman because he is a third party. In *Gribben*, our supreme court observed, "[i]t may well be that fairness and integrity of outcome and the deterrence of evidence destruction may require an additional tort remedy when evidence is destroyed or impaired by persons that are not parties to litigation and thus not subject to existing remedies and deterrence." 824 N.E.2d at 355.

However, in *Glotzbach*, our supreme court held that no third-party spoliation claim was available because there was no duty in the employer-employee context to preserve evidence.[9] 854 N.E.2d at 339. The court noted that

[a] cause of action for third-party spoliation was recognized in *Thompson v. Owensby*, 704 N.E.2d 134 (Ind.Ct.App. 1998), *trans. denied.* In that case the court permitted a plaintiff's claim against the defendant's liability insurer for failing to preserve evidence that the insurer had collected after litigation had commenced. The court reasoned, "[l]iability insurance carriers are no strangers to litigation, and it strains credulity to posit in a motion to dismiss that a liability carrier could be unaware of the potential importance of physical evidence."

*Id.* at 339 (quoting *Thompson*, 704 N.E.2d at 137). Further, in *Thompson*, our court observed: "In the context of the loss of evidence by an insurance carrier, the relationship between the carrier and a third party claimant could warrant recognition of a duty if the carrier knew or should have known of the likelihood of litigation and of the claimant's need for the evidence in the litigation." 704 N.E.2d at 137.

Hoffman argues that *Thompson* does not apply because Meridian has filed a complaint asserting tort claims against him, and therefore he is a "first party." Further, Hoffman claims:

Meridian has erroneously equated this case to the procedural route chose [sic] by the plaintiffs in *Thompson*, stating that "it was Plaintiff's prerogative whether to pursue a tort action" (against the bodily injury defendants), "or go forward on their claim that the insurance company failed to maintain evidence." Here, unlike the Plaintiffs in *Thompson*, Meridian has not chosen to forego claims that might involve the missing evidence, and seek recovery based solely on the theory of spoliation; it is pursuing all of its substantive claims and defenses against the Gubics and Hoffman.

Appellee's Br. at 26.

We agree with Hoffman that "the purported spoliation of evidence could serve as a defense to coverage under the Policy, but does not give rise to an independent claim against Hoffman." *See id.* If the trial court concludes that the Gubics, and/or Hoffman, acting as their agent, are responsible for spoliation of evidence, established rules of evidence permit the factfinder to infer that the missing evidence was unfavorable to the Gubics. *See Cahoon*, 734 N.E.2d at 545. Simply said,

---

9. Further, the *Glotzbach* court addressed several concerns if a claim of spoliation was recognized in that case including highly speculative damages and because "permitting claims of spoliation by the employer would open the door to satellite litigation against the employer that the [Worker's Compensation Act] is designed to foreclose." *Id.* at 341. Finally, the court determined that other remedies for spoliation were available, including contempt sanctions against non-parties who frustrate the discovery process by suppressing or destroying evidence. *Id.* These observations hold true in the case before us.

Meridian has a remedy for the alleged spoliation of evidence, and therefore, equity does not demand that we recognize an independent cause of action for spoliation of evidence under the facts and circumstances before us. *See e.g. Gribben*, 824 N.E.2d at 355.

### Conclusion

Meridian's claims against Hoffman are not actionable under Indiana law because Hoffman had no contractual relationship with Meridian in his capacity as a public adjuster and the Gubics' agent. Meridian's claims are simply coverage defenses, which Meridian can and has raised against the Gubics in the pending litigation. Meridian has also not alleged any compensable damages. Finally, Meridian cannot raise a claim of spoliation of evidence against Hoffman because Hoffman is both the Gubics' agent and a party to the litigation. We therefore affirm the trial court's grant of summary judgment in favor of Hoffman.

Affirmed.

RILEY, J., and BRADFORD, J., concur.