**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 28 2013, 9:56 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**GEORGE M. PLEWS**
**JOSH S. TATUM**
**COLIN E. CONNOR**
Plews Shadley Racher & Braun LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRET SHAW, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1203-PL-164 |
| | ) | |
| BRYAN C. JERMAN, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Timothy W. Oakes, Judge
Cause No. 49D13-0601-PL-1390

**February 28, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

Bret Shaw was denied insurance coverage for losses he claimed after his residence was burglarized and vandalized.  He sued the insurer, American Family, and Bryan Jerman, a certified public adjuster Shaw retained to help him obtain coverage.  In 2007, the trial court entered summary judgment for American Family, and we affirmed.  Then, in 2011, Shaw moved for summary judgment against Jerman.  The trial court granted Jerman's cross-motion and Shaw appeals.  We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

We stated the facts surrounding the denial of Shaw's insurance claim in *Shaw v. Am. Family Mut. Ins. Co.*, No. 49A02-0801-CV-17 (Ind. Ct. App. 2008), *trans. denied*.

The relevant designated facts most favorable to Shaw, the nonmovant, indicate that on November 24, 2003, Shaw notified American Family that his home had been broken into and vandalized five days earlier, resulting in the damage, loss, and destruction of both real and personal property.  Shaw's homeowner's policy with American Family reads in pertinent part as follows:

### INSURING AGREEMENT

*We will provide the insurance described in this policy in return for your premium payment and compliance with all policy terms.*  We will provide this insurance to you in reliance on the statements you have given us in your application for insurance with us.

You warrant the statements in your application to be true and this policy is conditioned upon the truth of your statements.  We may void this policy if the statements you have given us are false and we have relied on them.

You and all insureds must comply with the policy terms.  *Any failure to comply with policy terms by you or any other insured will affect the coverage by this insurance for you and all insureds.*

* * * * *

### CONDITIONS—SECTION I

* * * * *

9. Loss Payment.  We will adjust all losses with you.  We will

pay you unless some other party is named in the policy or is legally entitled to receive payment. *Loss will be payable 60 days after we receive your properly completed proof of loss and:*
a. *we reach agreement with you;*
b. there is an entry of a final judgment; or
c. there is a filing of an arbitration award with us.

* * * * *

18. Suit Against Us. *We may not be sued unless there is full compliance with all the terms of this policy.* Suit must be brought within one year after the loss or damage occurs.

19. *What You Must Do in Case of Loss. In the event of a loss to property that this insurance may cover, you and any person claiming coverage under this policy must:*
a. give notice as soon as reasonably possible to us or our agent

* * * * *

d. *as often as we reasonably require:*
(1) show us the damaged property before permanent repairs or replacement is made;
(2) *provide us with records and documents we request* and permit us to make copies; and
(3) *let us record your statements* and submit to examinations under oath by any person named by us, while not in the presence of any other insured, and sign the transcript of the statements and examinations;
e. *submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:*
(1) the date, time, location and cause of loss;
(2) *the interest you and others have in the property, including any encumbrances;*
(3) *the actual cash value and amount of loss of each item damaged or destroyed;*
(4) *other insurance that may cover the loss;*
(5) *changes in title, use, occupancy or possession of the property during the policy period;*
(6) *the plans and specifications of any damaged dwelling or structure we may request;*
(7) *detailed estimates for repair of the damage;* [and]
(8) *receipts for any increased costs to maintain your standard of living while you reside elsewhere, and records pertaining to any loss of rental income[.]*

* * * * *

3

## GENERAL CONDITIONS
\* \* \* \* \*

> 5. Cooperation. You must cooperate with us in performing all acts required by this policy.

Appellant's App. at 376-88 (italicized emphases added) (bold emphases omitted).

On December 5, 2003, American Family sent Shaw a proof of loss form to be completed and returned by February 3, 2004. Shaw retained certified public adjuster Bryan Jerman of Assura Corporation to assist him with obtaining coverage under the policy. On January 14, 2004, Jerman sent a letter and a notice to American Family regarding his representation of Shaw. The notice, signed by Shaw, requested that American Family contact Assura "directly on all matters regarding or related to [his] loss." *Id.* at 86.

On January 30, 2004, American Family claims examiner Joe Duffy sent a letter to Jerman, with a copy to Shaw,[1] stating that he had sent a proof of loss form to Shaw on December 5, 2003; that Shaw had acknowledged receipt of the form; and that Jerman had "60 days or until Tuesday, February 3, 2004 to complete the sworn Proof of Loss and return it to [American Family] with supporting documentation. Mr. Shaw's notarized signature is REQUIRED." *Id.* at 87. Duffy's letter further states in pertinent part,

> We request that you attach the following items or documents to the sworn Proof of Loss:
> 1. As provided under Conditions, Section I, point 19, c, found on page 9 of your policy, furnish us with a detailed list of the damaged property, showing the quantities, when and where acquired, original cost, current replacement value and the amount of loss claimed.
> 2. As provided under Conditions, Section I, point 19, e, paragraph 6, found on page 9 of your policy, provide the plans and specifications of the damaged dwelling or structure.
> 3. As provided under Conditions, Section I, point 19, e, paragraph 7, found on page 9 of your policy, provide detailed estimates for the repair of damage to your dwelling.
> As provided under Conditions, Section I, point 19, e., paragraph 8, found on page 9 of your policy, provide receipts for any increased costs to maintain your standard of living while you reside elsewhere, and records pertaining to any loss of rental

---

[1] Duffy sent Shaw a copy of all letters that he sent to Jerman.

4

income.

> I do not have the authority to make any verbal agreements or commitments on behalf of American Family Mutual Insurance Company. All agreements must be in writing. The "CONDITIONS—SECTION I" portion of the policy entitled What You Must Do In Case Of Loss, outlines the insured's duties. None of these requirements will be waived by American Family Mutual Insurance Company.

*Id.* at 87-88 (bold emphasis omitted).

In a letter to Jerman dated February 16, 2004, Duffy stated that he had not yet received the proof of loss form. He acknowledged that Shaw had complained that his furnace had stopped working, ostensibly because of the vandalism, although it was Duffy's "understanding that the furnace [had] not been working for some time." *Id.* at 90. Duffy stated that he had arranged to have someone inspect the furnace that day if Shaw could be contacted for an appointment. Finally, Duffy noted that he had requested a recorded statement from Shaw regarding the furnace claim, to which Jerman had agreed only if he could provide the list of questions that Duffy would ask. Duffy noted that he had rejected this condition because he could not "conduct a proper investigation being constrained to such a list." *Id.* at 90-91. Duffy noted that Jerman had agreed to drop this condition and that they had set an appointment for the recorded statement for 10:00 a.m. on February 19, 2004.

In a letter to Jerman dated February 23, 2004, in which Duffy enclosed a certified copy of Shaw's policy, Duffy stated that Jerman had informed him on February 18 that Shaw "did not want to make our meeting of February 19, 2004." *Id.* at 92. Duffy further stated that a furnace technician had contacted Shaw and agreed to inspect the furnace on the morning of February 17, but that Shaw did not answer either the door or his phone at the appointed time. According to Duffy, when the technician called Shaw later that same day, Shaw informed him that the furnace had been repaired over the weekend and was "now working fine." *Id.* Duffy stated that because American Family had not been "able to inspect the furnace [it would not be] able to give consideration to a claim for the furnace or Additional Living Expense as a direct result of this claim filed." *Id.*

In a letter to Jerman dated February 25, 2004, Duffy stated that he had received a proof of loss form from Jerman and that American Family was "denying the Proof of Loss after careful review." *Id.* at 93. Duffy stated that the form submitted by Jerman was "not in compliance with the American Family Insurance Form" and that he had enclosed another "American Family Sworn Statement in Proof of Loss form." *Id.* Duffy reiterated the terms of the policy's insuring agreement and conditions and asked Jerman to:

5

return the properly completed form with all supporting documentation. The proof must include all claims being made under Coverage[s] American Family [dwelling and dwelling extension], B [personal property] and C [loss of use and supplementary coverages]. The actual dollar amounts being claim[ed] must too appear on the Proof. In addition, there is no way to tell who[ ] actually notarized your proof, so please be sure to have your notary print their name as well as sign their name.

As an insurance professional you should know what is required in a Sworn Statement in Proof of Loss. The form you submitted is incomplete and not on the proper form. The form provided is not a Proof of Loss by definition.

*Id.* at 94.

In a letter to Jerman dated February 27, 2004, Duffy enclosed an authorization for information and access form and requested that Shaw read, sign, and return the form. Duffy reiterated the policy's cooperation clause and stated,

American Family is requesting the form to continue its investigation. Failure to provide us[ ] with the properly signed . . . form will hinder our ability to give proper consideration to the claims Bret Shaw has made and the insured's failure to cooperate with us[ ] is against the policy provisions.

I spoke to [the American family claims manager] yesterday. There is a misunderstanding regarding the estimate [for the repair of Shaw's home]. When asked by you if I had an estimate on February 10, 2004, I stated I did have an estimate, but was waiting on Jerry Hostetler's estimate along with the proof. I never stated I'd send you a copy of my estimate prior to receiving the proof.

*Id.* at 95.

On March 2, 2004, Duffy sent Jerman a letter that reads in pertinent part as follows:

This will acknowledge the message you left on my voice mail yesterday, March 1, 2004. You stated that you spoke to Mr. Shaw earlier that morning and Mr. Shaw stated he refuses to sign the previously mailed authorization form enclosed in my

6

letter dated February 27, 2004.

Mr. Shaw's refusal to sign the Authorization for Information and Access form is in violation of the terms and conditions of his policy. By not signing the authorization, Mr. Shaw is not complying with the terms and conditions of the policy indicating he must cooperate with us. His refusal to sign may jeopardize coverage and payment under his insurance policy with American Family Insurance.

To address your request that we set up an EUO, Examination Under Oath, of Mr. Shaw immediately, I must respectfully decline. We will determine when and if an EUO is needed. Until then I would suggest you respond to my letter dated February 25, 2004 in which we rejected your Proof and requested a proper Proof of Loss on the American Family form. I will await your response.

*Id.* at 96.

On March 23, 2004, Duffy sent Jerman a letter that reads in pertinent part as follows:

This letter is to remind you that we rejected your Proof of Loss.

* * * * *

The Proof must include all claims being made under Coverage[s] American Family, B and C. The actual dollar amounts being claimed must appear on the Proof. Furthermore, all supporting documentation must also accompany the Proof.

Here are some points of fact that your Proof submission did not include:
1. The actual dollar amount of loss claimed for each coverage.
2. The insured's interest in all property, contents and building.
3. Any other person(s), company or organization having an ownership interest in the contents or building.
4. Does any other insurance apply to this loss and will a claim be made under that insurance?
5. Prior to the loss, was there any change in your interest, use or occupancy of the building or contents?

7

6. The fraud language which is above the insured's signature must be included on the Proof of Loss and is required on all Proofs submitted.[2]

We are enclosing again our Proof of Loss form which has all items needed, including the fraud language, for your ease and simplification in responding to the Proof of Loss. You must attach documentation to support your claim. It is our understanding that you are in agreement with our building repair estimate. If that is correct, then please indicate that amount on the Proof of Loss.

In addition, there is no way to tell who actually notarized your proof, so please be sure to have your notary print their name as well as sign their name.

You had received the Sworn Statement in Proof of Loss form on February 26, 2004. Therefore, your properly completed Proof of Loss must be submitted by April 25, 2004.

I have also enclosed a copy of my March 2, 2004 letter outlining the fact that Mr. Shaw had refused to sign and return our Authorization for Information and Access form. Please be reminded on page 13 of 16 GENERAL CONDITIONS, it states;
5. Cooperation. You must cooperate with us in performing all acts required by this policy.

By not signing the authorization, Mr. Shaw is not complying with the terms and conditions of the policy. His refusal to cooperate may jeopardize coverage and payment under his insurance policy with American Family Mutual Insurance Company. We are again asking Mr. Shaw to sign the Authorization for Information and Access form, so I have enclosed another copy for your convenience.

We want to have the Authorization for Information and Access form signed and returned to us within 10 days of your receipt of this letter.

*Id.* at 98-99 (bold emphases omitted).

---

[2] *See* Ind. Code § 27-2-16-3(a) ("All preprinted claim forms provided by an insurer to a claimant that are required as a condition of payment of a claim must contain a statement that clearly states in substance the following: 'A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.'").

8

In a letter to Jerman dated November 18, 2004, American Family property claim manager George Deel stated,

> This will acknowledge the letter we received from Mr. Shaw's Power of Attorney, [his parents[3]] Jerry and Carolyn Shaw dated November 9, 2003.
>
> * * * * *
>
> Apparently, Mr. and Mrs. Shaw are misinformed with what has transpired on this claim. They seem to think we have been the delay in handling this claim, when in fact, Mr. Shaw has never submitted a proper Sworn Statement in Proof of Loss as required by the policy and requested by us. The only proof we have received was a partial proof which we received in February of 2004 and rejected on February 25, 2004. We reiterated the rejection and requested a proper proof on March 25, 2004.
>
> As we have indicated to you on numerous occasions, we cannot begin to process the claim of Mr. Shaw without this proof and the accompanying documentation to substantiate the claim being made. I should remind you that any items replaced after November 19, 2004, the one year anniversary of the loss date, can only be settled at actual cash value (ACV) and are not eligible for replacement cost (RC).
>
> Also, please contact Joe Duffy to make arrangements for him to stop by your office to inspect the Power of Attorney (POA). As we mentioned previously, the seal of the notary did not show up in the faxed copy you sent us and to deal with Mr. & Mrs. Pinson [sic], we need to visually verify they had the POA properly signed and notarized. We have to do this to make sure Bret Shaw is protected.
>
> We look forward to working with you on this claim.

*Id.* at 105.

On February 9, 2005, Duffy sent a letter to Shaw's attorney, Konstantine Orfanos, that begins,

---

[3] While his claim was pending, Shaw was incarcerated and granted his parents a power of attorney.

9

> This letter is in regard to your letter of representation I received by fax on February 2, 2005. You indicate that we have not cooperated, but we have. We have given ample opportunity for both Mr. Shaw and Mr. Jerman to provide us an actual Proof of Loss with supporting documentation.

*Id.* at 107. Duffy summarized his correspondence with Jerman, cited the applicable policy provisions, and detailed Shaw's and Jerman's failure to comply with them. Duffy went on to say,

> We never received a properly completed Proof of Loss from Bryan Jerman or Bret Shaw. It wasn't until June 6, 2004 that we talked and Bryan stated a Proof of Loss was dropped off at our office on or about March 25, 2004. He stated he had a signed receipt of the mail being delivered to our office. Bryan has failed to provide us with the documentation proving he delivered a revised Proof of Loss. I sent him a letter certified, as with all letters, offering to meet him to obtain the Proof of Loss and the signed receipt showing he delivered the Proof of Loss to the office on or about March 25, 2004. On June 10, 2004 I spoke to Bryan and he stated the proof may not have been sent after all. As I previously stated, we never received a Proof after the one rejected on February 25, 2004.
>
> * * * * *
>
> In conclusion, we gave ample time to resubmit the proof of loss. We gave them every opportunity to comply with the policy. The time limit has passed for completing the Proof of Loss. We made it very clear that we were not waiving our rights under the policy and that we were only giving them 60 more days to resubmit the Proof. It was never returned. This is a breach of contract. Further, Mr. Shaw never properly cooperated with us. He refused to sign an Authorization form, which we needed for the proper completion of our investigation. This is also a breach of the insurance contract. The one year time limit to collect replacement cost on any contents expired one year from the date of loss. A proper claim was never submitted. Finally, the one year limit to file suit ran on November 19, 2004, which is one year from the date of loss. This concludes any coverage on this loss. The actions of Mr. Shaw and his agent, Mr. Jerman[,] have violated the contract and substantially prejudiced our ability to investigate this claim. We are denying Bret Shaw's claim in its entirety. We are denying the claim for the above reasons either

10

singularly or in any combination.

*Id.* at 109-10.

On January 11, 2006, Shaw filed a complaint against American Family and Jerman.[4]  On April 10, 2006, American Family filed a motion to dismiss/motion for judgment on the pleadings.  On July 20, 2006, the trial court granted the motion to dismiss as to Shaw's breach of contract claim, which it allowed him to replead, and denied the motion as to his bad faith claim.  Shaw filed his first amended complaint on May 19, 2006, and his second amended complaint on July 31, 2006.

On May 3, 2007, American Family filed a motion asserting that it was entitled to summary judgment on two separate grounds:  (1) that Shaw failed to file suit within one year after the loss occurred as required by the policy; and (2) that Shaw had breached the policy by failing to submit a proper proof of loss and a signed authorization for access and information.  Shaw filed a response on September 4, 2007, and the trial court held a hearing on the motion nine days later.  On October 22, 2007, the trial court entered an order that reads in pertinent part as follows:

> The Court, being duly advised in the premises, determines that the material facts are not in dispute and that the law is with the Defendant and against Plaintiff, Bret D. Shaw.  The Court, finding that there is no just reason for delay, now grants Defendant's Motion for Summary Judgment and enters a final judgment in favor of the Defendant, American Family Mutual Insurance Company, and against the Plaintiff, Bret D. Shaw.  The Court holds that: Plaintiff breached the terms, conditions and requirements of the policy of insurance; the Defendant, American Family Mutual Insurance Company, owes no insurance coverage or liability to Plaintiff as a result of his alleged loss on November 19, 2003, and that the Defendant is not liable for any bad faith or punitive damages as alleged.

Slip op. at 2-12 (footnotes and emphasis in original).

Shaw appealed, and we affirmed that summary judgment.  *Id.* at 16.  In August of

_____

[4]  Shaw's original complaint does not appear in the record before us.

11

2011, Shaw moved for summary judgment against Jerman and Jerman filed a cross-motion. The trial court granted Jerman's motion, and Shaw brought this appeal.

## DISCUSSION AND DECISION

We note initially that Jerman did not file an appellee's brief. Instead of imposing on this court the burden of controverting arguments advanced for reversal, Indiana courts have long applied a less stringent standard of review with respect to showings of reversible error when the appellee does not file a brief. *Johnson County Rural Elec. Membership Corp. v. Burnell*, 484 N.E.2d 989, 991 (Ind. Ct. App. 1985). To win reversal, Shaw, as the appellant, need establish only that the lower court committed *prima facie* error. *Id*. In this context, "*prima facie*" means at first sight, on first appearance, or on the face of it. *Id*. Likewise, Shaw's statement of facts is deemed accurate and sufficient for the disposition of this appeal. *See id*. The rules stated above are not for the appellant's benefit; they have been established to relieve us of the burden of controverting the arguments advanced for reversal where such burden rests on the appellee. *Id*.

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Meridian Sec. Ins. Co. v. Hoffman Adjustment Co.*, 933 N.E.2d 7, 11 (Ind. Ct. App. 2010), *trans. denied*. In reviewing a summary judgment, we stand in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse. We consider all of the designated evidence in the light most favorable to the non-moving party. *Id*. The party appealing the summary judgment has the burden of persuading us the trial court's ruling was

12

improper. *Id.*

Shaw has demonstrated *prima facie* error. Ind. Code § 27-1-27-1 defines the role of public adjusters and provides in pertinent part:

> (a) The term "public adjuster" shall include every individual or corporation who, or which, for compensation or reward, renders advice or assistance to the insured in the adjustment of a claim or claims for loss or damages under any policy of insurance covering real or personal property and any person or corporation who, or which, advertises, solicits business, or holds itself out to the public as an adjuster of such claims. However, no public adjuster shall:
> (1) act in any manner in relation to claims for personal injury or automobile property damage; or
> (2) bind the insured in the settlement of claims.

Accompanying an undertaking to procure insurance is a duty to exercise reasonable skill, care, and diligence. *Medtech Corp. v. Indiana Ins. Co.*, 555 N.E.2d 844, 849 (Ind. Ct. App. 1990), *trans. denied*. The party on whose behalf the duty is being undertaken must relinquish control of the obligation; the party who adopts the duty must be acting *in lieu of* the original party. *Id.*

Shaw designated evidence that Jerman did not submit a timely proof of loss with repair estimates; told Shaw he did not need to give American Family the recorded statement it asked for and told American Family that Shaw would not give such a statement; and told American Family that Shaw would not sign a required authorization statement, but did not discuss the statement with Shaw. Shaw also designated evidence that his claim was denied. That designated evidence gives rise to a genuine issue of fact as to whether Jerman, as Shaw's agent, might be liable to Shaw. Summary judgment for Jerman was therefore error.

However, there was also evidence that Shaw sometimes did not cooperate with Jerman and his actions or inaction might have been the reason his claim was denied. Jerman's affidavit, which was designated in his response to Shaw's summary judgment motion, includes statements that Jerman represented Shaw as a "limited engagement," (App. at 171), meaning Shaw was responsible for compiling information and providing it to Jerman, and Shaw did not respond to some requests for information Jerman needed to pursue the claim. (*Id*. at 172.) The affidavit also says Shaw refused to give a recorded statement the insurer wanted. (*Id*. at 173.) We therefore decline Shaw's invitation to direct the entry of summary judgment in his favor.

We reverse the summary judgment for Jerman and remand for further proceedings.

Reversed and remanded.

NAJAM, J., and KIRSCH, J., concur.