In the

# United States Court of Appeals

### For the Seventh Circuit

———————

No. 14-2571

ROBERT LODHOLTZ, as Assignee of
Pulliam Enterprises, Inc.,

*Plaintiff-Appellant*,

*v.*

YORK RISK SERVICES GROUP,
INCORPORATED,

*Defendant-Appellee*.

———————

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
Nos. 3:11-cv-00432-RL-CAN,
3:11-cv-00435-RL-CAN — **Rudy Lozano**, *Judge*.

———————

ARGUED DECEMBER 4, 2014 — DECIDED FEBRUARY 11, 2015

———————

Before BAUER, RIPPLE, and SYKES, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Robert Lodholtz sustained injuries
in the factory of Pulliam Enterprises, Inc. ("Pulliam"). He
then brought an action in the Superior Court of St. Joseph
County, Indiana, against Pulliam, seeking compensation for
those injuries. Pulliam in turn filed an insurance claim with

its insurer, Granite State Insurance Company ("Granite"). Granite retained a claims adjuster, York Risk Services Group, Inc. ("York"). Pulliam assumed, erroneously, that Granite would provide a defense under the insurance policy and defaulted on the state court claim. Neither Granite nor York ever had communicated to Pulliam whether they believed Granite had a duty to defend Pulliam under the terms of the policy.

Pulliam subsequently entered into a settlement agreement with Mr. Lodholtz. Under the terms of that agreement, Pulliam assigned to Mr. Lodholtz any claims it had against Granite or its agents for failing to undertake a defense under the insurance policy. The agreement also provided that Mr. Lodholtz would not seek to recover its damages from Pulliam.

Following the entry of a default judgment in the underlying state case, Granite brought this action in the district court, seeking a declaratory judgment that it had no duty to indemnify Pulliam. Mr. Lodholtz later filed a complaint in the district court against Granite, alleging breach of contract, bad faith, and negligence, and against York for negligence. The district court consolidated the cases. York then moved for judgment on the pleadings, contending that, under Indiana law, a claims adjuster such as itself owes no legal duty to the insured. The district court granted the motion. After the district court entered a final judgment in favor of York and

made the requisite certification under Federal Rule of Civil Procedure 54(b), Mr. Lodholtz appealed.[1]

The district court correctly granted the motion to dismiss. As the district court noted, the Court of Appeals of Indiana has held that an insurance adjuster owes no legal duty to the insured, and Mr. Lodholtz has failed to establish that the Indiana Supreme Court would disagree with that decision.

# I

## BACKGROUND

### A.

Mr. Lodholtz was employed by Forge Staffing and assigned to perform services at Pulliam's assembly plant. A machine owned and maintained by Pulliam malfunctioned and caused Mr. Lodholtz to be pulled into a laser cutting machine. He suffered severe injuries.

On June 24, 2011, Mr. Lodholtz filed an action against Pulliam in the Superior Court of St. Joseph County, Indiana, alleging that he sustained his injuries as a result of Pulliam's negligence. On June 27, 2011, Pulliam was served with the complaint, which it promptly forwarded to Granite, its insurer.[2] Granite then assigned York the task of handling the Lodholtz complaint for Pulliam.

---

[1] The jurisdiction of the district court was based on 28 U.S.C. § 1332. Our jurisdiction is based on 28 U.S.C. § 1291.

[2] Granite had sold an insurance policy to Pulliam on January 12, 2011. Pulliam timely paid all premiums on the policy, which covered January 2011 to January 2012.

On July 7, 2011, York notified Pulliam that it had received the complaint and had set up a file on the matter. The next day, York contacted Mr. Lodholtz's counsel and requested an extension for Pulliam to file an answer to the complaint. Mr. Lodholtz's counsel agreed to the extension. On July 11, 2011, York confirmed in a letter to Mr. Lodholtz that Pulliam had received an extension to answer the complaint until August 19, 2011. This letter confirmed that York was the authorized representative of Granite and their insured, Pulliam.

York reassigned the handling of the claim to a more senior adjuster within the company, who began to investigate whether the claim was within the policy's coverage. A third adjuster later assumed internal responsibility for the case and, on August 18, 2011, sent a letter to Pulliam stating that the handling of the claim would "progress as seamlessly as possible."[3]

Despite these assurances to Pulliam, York did not retain counsel to defend the company against Mr. Lodholtz's claim. Nor did it inform Pulliam that Granite would not defend Pulliam. Granite admitted that York "should have advised Defendant Pulliam before August 19, 2011 that it believed this lawsuit was not covered under the Granite State Policy and that Defendant Pulliam should have retained counsel to protect its interests."[4]

On August 22, 2011, after Pulliam's extended deadline to file an answer had passed, Mr. Lodholtz filed a motion for

---

[3] R.1-8 at 1. All record citations are to the docket in Case No. 3:11-cv-435.

[4] R.1 at 4 ¶ 27 (Lodholtz Compl.).

default judgment. This motion was served upon Pulliam, who forwarded it to Granite on August 23. On the same day, the court entered a default judgment against Pulliam and ordered that a trial be set on damages. Also on the same day, York sent an email to Pulliam, stating:

> Sincere apologies for any miscommunication in the past regarding the assignment of defense counsel. Please note that Pulliam Enterprises, Inc. will need to retain its own defense attorney to represent you in this matter for as explained the insurance carrier Granite State does not appear to cover this loss.[5]

The email explained that the policy did not cover injuries to employees of the insured.[6]

On August 24, 2011, Pulliam's counsel appeared for Pulliam in the state action and obtained an extension until September 22, 2011, to file an answer. Pulliam also emailed York and requested that Granite provide its official coverage position. Pulliam stated that, in light of what had occurred, Pulliam might have to assert various claims against York and Granite. York responded that Granite has issued or would issue shortly, or direct York to issue, a letter denying cover-

---

[5] R.1-7.

[6] The Granite insurance policy excluded coverage for bodily injury to an employee of the insured that occurred in the course of employment. *See* R.1-1 at 16 (Insurance Contract). In a motion submitted to the state court, Granite stated that it was not clear whether Mr. Lodholtz, as an employee of Forge Staffing assigned to Pulliam, was an "employee" of Pulliam. *See* R.1-4 at 4 ¶ 23.

age. York further suggested that Pulliam take action to vacate the default and defend itself in the state action.

Pulliam reached a settlement with Mr. Lodholtz on September 7, 2011. The agreement provided that Pulliam would not move to vacate the default judgment, nor would it contest the amount of damages that Mr. Lodholtz sought to establish. Pulliam further agreed to assign Mr. Lodholtz all claims that it had against Granite and its agents. Mr. Lodholtz would be entitled to proceed against Granite and York to collect damages on any judgment Mr. Lodholtz obtained against Pulliam. For his part, Mr. Lodholtz agreed not to seek execution against Pulliam's assets for any portion of the judgment.

On November 1, 2011, after an evidentiary hearing, the state court entered a final judgment for Mr. Lodholtz and against Pulliam for $3,866,462.

### B.

On November 3, 2011, Granite filed an action in the district court, seeking a declaratory judgment that it had no duty to indemnify Pulliam in the underlying state court lawsuit. The next day, Mr. Lodholtz, as assignee of the claims held by Pulliam, filed a complaint against Granite for breach of contract, bad faith, and negligence, and against York for negligence. The district court consolidated these cases.

Count IV of Mr. Lodholtz's federal complaint alleged that York negligently had breached a duty owed to Pulliam by failing to exercise reasonable care in handling Pulliam's defense in the state-court proceedings. York answered that no relationship existed between either York and Pulliam or

between York and Mr. Lodholtz from which a duty or breach could occur. York then filed a motion for judgment on the pleadings, contending that Mr. Lodholtz's complaint does not give rise to a negligence claim. Specifically, York contended that it had no legal duty to Pulliam, Mr. Lodholtz's assignor, and therefore Mr. Lodholtz could not recover.

The district court granted York's motion. The court noted that whether a claims adjuster, such as York, had a common law duty of reasonable care toward an insured, such as Pulliam, is not a novel question under Indiana law. It concluded that "York, as Granite State's insurance adjuster, has no common law duty of reasonable care to Pulliam in handling the defense of the state court case."[7] The court further concluded that York did not assume a duty to Pulliam because York had not specifically and deliberately undertaken the task that it was alleged to have performed negligently.

On June 6, 2014, the district court granted York's motion for entry of final judgment under Federal Rule of Civil Procedure 54(b).[8] Mr. Lodholtz now appeals the court's decision to dismiss his claim against York.

---

[7] *Granite State Ins. Co. v. Pulliam Enters., Inc.*, Nos. 3:11-CV-432, 3:11-CV-435, 2014 WL 1094877, at *4 (N.D. Ind. Mar. 19, 2014).

[8] Federal Rule of Civil Procedure 54(b) provides:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only

(continued…)

## II

## DISCUSSION

### A.

We first set forth the standards that govern our decision today. We review de novo a district court's decision to render judgment on the pleadings under Rule 12(c). *Adams v. City of Indianapolis*, 742 F.3d 720, 727 (7th Cir. 2014). A Rule 12(c) motion is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Id.* at 727–28. In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although we draw all reasonable inferences and facts in favor of the nonmovant, we need not accept as true any legal assertions. *Vesely v. Armslist LLC*, 762 F.3d 661, 664–65 (7th Cir. 2014).

---

(…continued)

> if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

The district court's jurisdiction was based on diversity of citizenship. The district court, and this court on review, is therefore obliged to apply state law to the substantive issue in the case. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Weigle v. SPX Corp.*, 729 F.3d 724, 737 (7th Cir. 2013). The parties do not dispute that Indiana law governs this action. *See Koransky, Bouwer & Poracky, P.C. v. Bar Plan Mut. Ins. Co.*, 712 F.3d 336, 341 (7th Cir. 2013) (noting that, in the absence of an assertion to the contrary by the parties, it is appropriate to apply the law of the state in which the district court sits). Thus, we apply the law that would be applied by the Indiana Supreme Court. *See King v. Order of United Commercial Travelers of Am.*, 333 U.S. 153, 160–61 (1948); *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236–37 (1940); *Home Valu, Inc. v. Pep Boys-Manny, Moe & Jack of Del., Inc.*, 213 F.3d 960, 963 (7th Cir. 2000). If the Indiana Supreme Court has not spoken on the issue, we generally treat decisions by the state's intermediate appellate courts as authoritative, unless there is a compelling reason to think that the state supreme court would decide the issue differently. *See Home Valu, Inc.*, 213 F.3d at 963.

**B.**

The Indiana Supreme Court has not addressed the precise issue before us. Following our established protocol, therefore, we turn to the decisions of the Court of Appeals of Indiana for guidance. An examination of the cases decided by that court sheds considerable light on the path that we must follow. In *Troxell v. American States Insurance Co.*, 596 N.E.2d 921 (Ind. Ct. App. 1992), the Court of Appeals of Indiana noted, albeit briefly, that an insurance adjuster is an

agent of the insurer and therefore has no direct relationship with the insured. *See id.* at 925 n.1. The court cited with approval *Velastequi v. Exchange Insurance Co.*, 505 N.Y.S.2d 779 (N.Y. Civ. Ct. 1986), which held that the adjuster's duty was solely to the insurer, and not to the insured.[9] *See id.* at 782.

The Court of Appeals of Indiana confirmed this approach in *Meridian Security Insurance Co. v. Hoffman Adjustment Co.*, 933 N.E.2d 7 (Ind. Ct. App. 2010). In *Meridian*, an *insurer* brought a claim against the *insured's* adjuster, alleging that the adjuster had interfered with the insurer's contract with the insured and had engaged in fraud. The Indiana court held that, by entering into an adjuster agreement with the insured, the adjuster was the insured's agent. As the in-

---

[9] New York courts continue to apply the rule announced in *Velastequi v. Exchange Insurance Co.*, 505 N.Y.S.2d 779 (N.Y. Civ. Ct. 1986). *See Columbia Energy Grp. v. Fisher*, 851 N.Y.S.2d 12, 13 (N.Y. App. Div. 2008) (holding that insurance adjuster's obligations flow from its contracts and that the insured "provided no authority for its contention that [the adjuster] also had a common law duty" to the insured); *Bardi v. Farmers Fire Ins. Co.*, 687 N.Y.S.2d 768, 787 (N.Y. App. Div. 1999) ("As agents of a disclosed principal whose actions were undertaken at the direction of the insurer, the adjusters cannot be held personally responsible to plaintiffs…."); *Youngs v. Sec. Mut. Ins. Co.*, 775 N.Y.S.2d 800, 801 (N.Y. Sup. Ct. 2004) (holding that, "[b]ecause there was no contractual relationship between [the adjuster] and the insured, it follows that the absence of any other independent duty by [the adjuster] to the insured precludes an action against [the adjuster] individually"); 31 Anne M. Payne & Joseph Wilson, *New York Practice Series* § 31:38 (2014–2015 ed.) ("The insurance adjuster owes its duties to the insurance company, as its agent or employee. …Generally, insurance adjusters, as agents and employees of the insurer, do not owe the insured any independent duty that could cause the adjuster to be personally liable to the insured for bad faith.").

sured's agent, the adjuster could not be liable to the insurer.
*See id.* at 12. The court noted that

> [a]n agent is not liable for harm to a person
> other than his principal because of his failure
> adequately to perform his duties to his princi-
> pal, unless physical harm results from reliance
> upon performance of the duties by the agent,
> or unless the agent has taken control of land or
> other tangible things.

*Id.* (alteration in original) (internal quotation marks omitted).
In dismissing the claims against the adjuster, the court noted
that the adjuster's status as the insured's agent insulated it
from liability from the insurer. *See id.* at 14. Therefore, alt-
hough dealing with a distinctly different factual situation,
the Indiana court articulated, and relied upon, the principles
that it had articulated in *Troxell*.

These two decisions by Indiana's intermediate appellate
court, *Troxell* and *Meridian*, provide substantial support for
the view that a claims adjuster does not owe a duty of care to
the insured. Mr. Lodholtz offers no compelling reason for
why the Indiana Supreme Court would not apply the rule
stated in *Troxell*.

Mr. Lodholtz first submits that these cases are inapposite
to the present case because they apply only to first-party
claims, while the present action presents a third-party claim.
We cannot accept this argument. Mr. Lodholtz has not been

able to invite our attention to any Indiana case or, indeed, a case in any other state that recognizes such a distinction.[10]

He relies on *Erie Insurance Co. v. Hickman ex rel. Smith*, 622 N.E.2d 515 (Ind. 1993), to support his view. But in *Erie*, the court only noted that the relationship between an insurer and insured is unique because it can be both of an adversarial and of a fiduciary nature. *See id.* at 518. The court explicitly refused to address whether the first- or third-party distinction would affect the circumstances in which an insurer could be held liable. *See id.* at 519 n.2. It would be remarkable to extend that distinction to claims against an insurance adjuster when the Indiana Supreme Court has not yet applied it to claims against an insurer.

Not only can Mr. Lodholtz not find case-law support for his view, but there are also three additional considerations that indicate that the Indiana Supreme Court would adopt the rule articulated in *Troxell*. First, the approach adopted by the Indiana appellate court in *Troxell* is the rule adopted by the majority of American jurisdictions.[11] *See Shree Hari Ho-*

---

[10] Courts have applied the same rule insulating claims adjusters from liability to the insured in both first- and third-party claims without distinction. *See, e.g.*, *Koch v. Bell, Lewis & Assocs., Inc.*, 627 S.E.2d 636, 638–39 (N.C. Ct. App. 2006); *Dear v. Scottsdale Ins. Co.*, 947 S.W.2d 908, 917 (Tex. App. 1997), *overruled on other grounds by Apex Towing Co. v. Tolin*, 41 S.W.3d 118 (Tex. 2001); *see also Wolverton v. Bullock*, 35 F. Supp. 2d 1278, 1280–81 (D. Kan. 1998) (applying Kansas law and holding that a claims adjuster did not owe the insured a duty of good faith in an action involving a third-party claim).

[11] A survey of state-court decisions confirms that the majority of states have held that a claims adjuster owes no independent duty to the insured. *See Akpan v. Farmers Ins. Exch., Inc.*, 961 So. 2d 865, 874 (Ala. Civ.

(continued…)

---

(…continued)

App. 2007) (holding that an independent adjuster owes no duty to the insured); *Meineke v. GAB Bus. Servs., Inc.*, 991 P.2d 267, 271 (Ariz. Ct. App. 1999) (same); *Sanchez v. Lindsey Morden Claims Servs., Inc.*, 84 Cal. Rptr. 2d 799, 803 (Cal. Ct. App. 1999) (same); *Grossman v. Homesite Ins. Co.*, No. FSTCV075004413S, 2009 WL 2357978, at *4–5 (Conn. Super. Ct. July 6, 2009) (same); *King v. Nat'l Sec. Fire & Cas. Co.*, 656 So. 2d 1338, 1339 (Fla. Dist Ct. App. 1995) (per curiam) (holding that "Florida law does not recognize a cause of action by an insured against an independent insurance adjuster in simple negligence"); *Baugh v. Parish Gov't Risk Mgmt. Agency*, 715 So. 2d 645, 647 (La. Ct. App. 1998) (holding that an independent adjuster owes no duty to the insured); *Haney v. Fire Ins. Exch.*, 277 S.W.3d 789, 792–93 (Mo. Ct. App. 2009) (same); *Columbia Energy Grp.*, 851 N.Y.S.2d at 13 (same); *Koch*, 627 S.E.2d at 638–39 (citing with approval the majority rule and holding that an adjuster did not owe a duty to claimants that were not the insured); *Trinity Baptist Church v. Bhd. Mut. Ins. Servs., LLC*, No. 113,072, 2014 WL 6908858, at *8–9 (Okla. Dec. 9, 2014) (holding that an independent adjuster owes no duty to the insured); *Charleston Dry Cleaners & Laundry, Inc. v. Zurich Am. Ins. Co.*, 586 S.E.2d 586, 588–89 (S.C. 2003) (same); *Dear*, 947 S.W.2d at 917 (same); *Hamill v. Pawtucket Mut. Ins. Co.*, 892 A.2d 226, 230 (Vt. 2005) (same); *see also Robertson Stephens, Inc. v. Chubb Corp.*, 473 F. Supp. 2d 265, 280 (D.R.I. 2007) (holding that claims adjuster did not owe a duty of reasonable care to insured under Rhode Island law). *But see Cont'l Ins. Co. v. Bayless & Roberts, Inc.*, 608 P.2d 281, 287–88 (Alaska 1980) (holding that a claims adjuster owes the insured a duty of ordinary care); *Morvay v. Hanover Ins. Cos.*, 506 A.2d 333, 335 (N.H. 1986) (holding that claims adjusters owe a duty to the insured to conduct a fair and reasonable investigation of an insurance claim).

To summarize, the state courts of Alabama, Arizona, California, Connecticut, Florida, Louisiana, Missouri, New York, North Carolina, Oklahoma, South Carolina, Texas, and Vermont have held that a claims adjuster does not owe a duty of care to the insured. Similarly, a federal court has applied the laws of Rhode Island and reached the same conclusion. In contrast, only Alaska and New Hampshire recognize that an adjuster owes a duty of care to the insured. Indeed, while this appeal was

(continued…)

*tels, LLC v. Soc'y Ins. Co.*, No. 1:11-cv-01324, 2013 WL 1500455, at \*3 (S.D. Ind. April 11, 2013) (concluding that, in *Troxell*, Indiana adopted the majority approach).

Second, the rule comports with the general principles of Indiana agency law. Generally, an agent is not liable for actions taken on behalf of the principal. *See Greg Allen Constr.*

---

(…continued)

pending, Oklahoma, which originally had applied the minority rule, reversed course and adopted the majority view. *See Trinity Baptist Church*, 2014 WL 6908858, at \*8–9, *overruling Brown v. State Farm Fire & Cas. Co.*, 58 P.3d 217 (Okla. Civ. App. 2002).

Some state courts have been more willing to hold that an insurance adjuster may be liable to the insured under alternative theories. *See Bock v. Hansen*, 170 Cal. Rptr. 3d 293, 304 (Cal. Ct. App. 2014) (holding "that a cause of action for negligent misrepresentation can lie against an insurance adjuster"); *Riccatone v. Colo. Choice Health Plans*, 315 P.3d 203, 207 (Colo. App. 2013) (holding that, "absent a financial incentive to deny an insured's claims or coerce a reduced settlement, a third party that investigates and processes an insurance claim does not owe a duty of good faith and fair dealing to the insured"); *Bass v. Cal. Life Ins. Co.*, 581 So. 2d 1087, 1090 (Miss. 1991) (holding that a claims adjuster is not liable for simple negligence but may be liable for gross negligence). *But see Bleday v. OUM Grp.*, 645 A.2d 1358, 1363 (Pa. Super. Ct. 1994) (holding that insured could not bring a breach of good faith action against an adjuster because the adjusters owed no contractual duty). Generally, however, courts reject attempts to impose liability on an insurance adjuster. *See* 14 Steven Plitt et al., Couch on Insurance § 208:10 (3d ed. 2005 & Supp. 2014) ("Liability for conduct of adjusters and investigators employed by the insurer directly generally falls primarily on the insurer in its status as the employer, and personal liability is unusual."); Thomas R. Malia, Annotation, *Liability of Independent or Public Insurance Adjuster to Insured for Conduct in Adjusting Claim*, 50 A.L.R.4th 900 (1986 & Supp. 2014) (providing an overview of the legal theories under which claims are brought against claims adjusters, generally without success).

*Co. v. Estelle*, 798 N.E.2d 171, 174 (Ind. 2003) (noting an "[a]gent who intentionally or negligently fails to perform duties to his principal is not thereby liable to a person whose economic interests are thereby harmed," and "[a]n agent is not liable for harm to a person other than his principal because of his failure adequately to perform his duties to his principal, unless physical harm results from reliance upon performance of the duties by the agent") (alterations in original) (quoting Restatement (Second) of Agency §§ 352, 357 (1958)); *McAdams v. Dorothy Edwards Realtors, Inc.*, 604 N.E.2d 607, 612 (Ind. 1992) (holding that real estate broker was agent of seller and therefore not liable to buyer under agency principles and noting that the wrong was therefore perpetrated by the principal).

Mr. Lodholtz also submits that an agent who commits a tortious act is liable *along with* the principal. But Mr. Lodholtz ignores the Indiana Supreme Court's distinction between acts that would be tortious despite a contractual relationship and those acts that are only tortious because of a contractual relationship. *See Greg Allen Constr. Co.*, 798 N.E.2d at 173–75 ("The proper formulation of the reason Allen is not liable here is that his negligence consisted solely of his actions within the scope of his authority in negligently carrying out a contractual obligation of the corporation as his employer. Nothing he did, and therefore nothing the corporation did, constituted an independent tort if there were no contract."). An agent is not liable for the harm that befalls a third party by failing to perform under the contract. *Cf. Brown v. Owen Litho Serv., Inc.*, 384 N.E.2d 1132, 1135 (Ind. App. Ct. 1979) (noting an agent is not liable if the principal is disclosed at the time of contracting). These principles apply here because the legal duty attached to an insurance

claim flows from the parties' contractual obligations. *See Meridian Sec. Ins. Co.*, 933 N.E.2d at 12; *see also Meineke v. GAB Bus. Servs., Inc.*, 991 P.2d 267, 271 (Ariz. Ct. App. 1999) (noting an "adjuster's obligation is measured by the contract between the adjuster and the insurer"); *cf. Erie Ins. Co.*, 622 N.E.2d at 518–19. York and Pulliam had no such contractual relationship.

Third, the decision comports with the logic underlying insurer liability in Indiana. In Indiana, insurer liability for negligence is premised on the unique nature of insurance contracts. *See Erie*, 622 N.E.2d at 518–19. In *Erie*, the court noted that "[t]his contractual relationship is at times a traditional arms-length dealing between two parties,…but it is also at times one of a fiduciary nature, and, at other times, an adversarial one." *Id.* at 518 (citation omitted). The court concluded that, "[g]iven the *sui generis* nature of insurance contracts," it was appropriate to recognize "a cause of action for the tortious breach of an insurer's duty to deal with the insured in good faith." *Id.* at 519. But the adjuster is not a party to that contract. Consequently, courts have held that the adjuster's liability is premised on its contract with the insurer and is thus limited to the insurer. *See Meineke*, 991 P.2d at 270–71 ("[T]he duties of an insurance adjuster vary and are defined by the terms of the contract between the insurer and the adjuster….We conclude that the relationship between adjuster and insured is sufficiently attenuated by the insurer's control over the adjuster to be an important factor that militates against imposing a further duty on the adjuster to the insured."); *see also* 46A C.J.S. *Insurance* § 1876 (2007 & Supp. 2014) ("An adjuster who is retained by an insurance company is subject to a duty which runs to the company and not to the insured in adjustment of a claim, and, where not a

party to the contract of insurance, he or she is not subject to an implied duty of good faith and fair dealing to the insured." (footnote omitted)).

## C.

Mr. Lodholtz not only disputes the applicability of the specific doctrinal approach adopted by the Court of Appeals of Indiana, but offers alternate approaches that, in his view, the Indiana Supreme Court would adopt: that York owed a common law duty to Pulliam and, alternatively, that York assumed a duty to Pulliam. Neither of these approaches casts serious doubt on the approach taken by the Court of Appeals of Indiana nor provides any basis for questioning whether the State's Supreme Court would depart from the view of its intermediate appellate court.

In this respect, Mr. Lodholtz contends that the Indiana Supreme Court would rely on the three-part test articulated in *Webb v. Jarvis*, 575 N.E.2d 992 (Ind. 1991),[12] and hold that York owes a common law duty to Pulliam under Indiana law. In *Webb*, the Indiana Supreme Court set forth three factors to determine whether a common law duty exists: "(1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public poli-

---

[12] In *Webb v. Jarvis*, 575 N.E.2d 992 (Ind. 1991), the court addressed whether a physician could be held liable for prescribing steroids to a patient who subsequently became violent. According to the court, the plaintiff "sought recovery from Dr. Webb on the theory that his overprescribing of anabolic steroids turned Neal into a toxic psychotic who was unable to control his rages." *Id.* at 994.

cy concerns." *Id.* at 995. Pointing to a series of communications between York and Pulliam, Mr. Lodholtz submits that Pulliam, like any insured, relied upon the adjuster. Specifically, Mr. Lodholtz relies on York's representation that it was the authorized representative of Pulliam, York's securing for Pulliam an extension to answer the complaint, York's handling the Lodholtz complaint for Pulliam, York's investigation of the lawsuit and potential coverage issues, and York's letter to Pulliam stating that the handling of the claim would progress as seamlessly as possible. Mr. Lodholtz argues that, in light of these activities, York had actual knowledge that Pulliam was relying on its services, thus creating a relationship "akin to that of a third party beneficiary of a contract, where the professional has actual knowledge that the services being provided are, in part, for the benefit of such third persons." *Id.* at 996.

We cannot accept this argument. We think that the Indiana courts would regard the content of York's communications with Pulliam simply as evidence of York's position as an agent of Granite. Indeed, other parts of the record, when read with the areas suggested by Mr. Lodholtz, add additional support for such a view.[13] Because the record demonstrates an agency relationship between Granite and York and because agents are generally only liable to the principal un-

---

[13] *See* R.1-3 (York representing itself as "the authorized representative of Granite State Insurance Company and their insured Pulliam Enterprises Inc."); R.1-12 at 1 (Pulliam asking York to inform Granite that it declines the defense with reservation of rights); R.1-10 at 2 (Pulliam assigning all claims against Granite and its agents, without ever mentioning York by name).

der Indiana law, we do not believe that the Indiana Supreme Court would extend the liability of York further. *See Greg Allen Constr. Co*, 798 N.E.2d at 174.

Mr. Lodholtz also points out that Pulliam was a reasonably foreseeable victim injured by a reasonably foreseeable harm. *See Webb*, 575 N.E.2d at 997. It should be reasonably foreseeable to any claims adjuster, he continues, that the insured is relying on them to coordinate the insured's defense and that the entry of a default judgment is a foreseeable consequence of failing to answer a complaint. York responds that, as an agent of Granite, Granite was the only foreseeable victim of York's negligence. It would seem that, as a practical matter, it is foreseeable that negligence by a claims adjuster may harm the insured. However, this factor alone cannot be relied upon to impose a legal duty.[14] *See id.* at 995 (noting factors must be balanced).

Turning to the public policy factor, Mr. Lodholtz relies on *Key v. Hamilton*, 963 N.E.2d 573 (Ind. Ct. App. 2012), which held that a driver who waves another driver through an intersection, after engaging in a thorough examination of traffic in order to ensure another driver's safety, has a duty

---

[14] For example, in *Rodriguez v. United States Steel Corp.*, No. 45A04-1407-CT-350, 2014 WL 7450436 (Ind. Ct. App. Dec. 31, 2014), the Court of Appeals of Indiana, recognizing that the foreseeability component should not be narrowly applied, held that "a third-party motorist could be a reasonably foreseeable victim of an injury inflicted by an employee suffering from work-induced fatigue." *See id.* at *4. Nonetheless, the court concluded that "public policy strongly counsels against the imposition of a duty" and held that an employer did not have a duty to monitor worker fatigue. *Id.*

to third parties that may be harmed as a result. *See id.* at 584. The court noted that public policy demands that the court hold individuals responsible for the results of their behavior because "allowing an individual to escape liability for damage he causes would fly in the face of the normal expectations of our civil society." *Id.* at 583.

It is, of course, the prerogative of the Indiana courts to fashion state common law according to the public policy of Indiana, and Mr. Lodholtz's contentions continue to ignore that, in Indiana, torts alleged in the context of an insurance contract are not run-of-the-mill torts. Indiana courts have imposed a duty on insurers because of their unique relationship with the insured through the insurance contract. *See Erie*, 622 N.E.2d at 519 (noting "it is in society's interest that there be fair play between insurer and insured" because of the "*sui generis* nature of insurance contracts"). Absent an insurance contract, the policy rationales for imposing a duty on a claims adjuster cease to exist. Mr. Lodholtz also ignores that the relationship between the parties implicate agency principles. That York was an agent of Granite appears to provide a particularly strong public-policy rationale for refusing to conclude that the Indiana Supreme Court would recognize a duty here.

Mr. Lodholtz further contends that York assumed a duty to Pulliam by working as an adjuster on the Pulliam insurance claim. Indiana recognizes, as a general principle, an assumption of duty when a party affirmatively assumes or undertakes a duty to act. *See Griffin v. Simpson*, 948 N.E.2d 354, 359 (Ind. Ct. App. 2011). To have assumed a duty, "'[t]he defendant must have specifically and deliberately undertaken the duty which he is charged with having done

negligently.'" *Id.* at 359–60 (quoting *Holtz v. J.J.B. Hilliard W.L. Lyons, Inc.*, 185 F.3d 732, 744 (7th Cir. 1999)). "[T]he party on whose behalf the duty is being undertaken [must] relinquish control of the obligation; the party who adopts the duty must be acting '*in lieu of*' the original party." *Id.* at 360 (quoting *Holtz*, 185 F.3d at 744). "While the issue of whether a defendant has assumed a duty generally rests with the trier of fact, if no facts or reasonable inferences in the record create material issues of genuine fact, the question can be determined by law." *Holtz*, 185 F.3d at 744 (citation omitted). Here, the uncontroverted evidence shows that York, in undertaking various actions in the underlying transactions, acted in fulfillment of its contractual duties to Granite and on behalf of Granite.

### Conclusion

We conclude that the district court appropriately dismissed the claim against York. The judgment of the district court is affirmed.

AFFIRMED