**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0297-18T4

FEDWAY ASSOCIATES, INC.,

     Plaintiff-Appellant,

v.

ENGLE MARTIN &
ASSOCIATES, INC. and
CERTAIN UNDERWRITERS
AT LLOYD'S OF LONDON,

     Defendants-Respondents,

and

MATSON, DRISCOLL &
D'AMICO, LLP, a/k/a MDD
FORENSIC ACCOUNTANTS,

     Defendant,

and

ENGLE MARTIN &
ASSOCIATES, INC.,

     Defendant/Third-Party
     Plaintiff-Respondent,

v.

R.T.C. PROPERTIES, CORPORATE
RISK MANAGEMENT, INC., and
WILLIAM B. HEENEY,

    Third-Party Defendants.

_____

Argued September 17, 2019 – Decided October 4, 2019

Before Judges Yannotti, Hoffman and Currier.

On appeal from the Superior Court of New Jersey, Law
Division, Hudson County, Docket No. L-3308-15.

Leon J. Sokol argued the cause for appellant (Cullen
and Dykman, LLP, attorneys; Leon J. Sokol, of counsel
and on the briefs; Steven Siegel and Daniel S. Eichhorn,
on the briefs).

Ryan Sestack (Gordon Rees Scully Mansukhani, LLP)
of the New York bar, admitted pro hac vice, argued the
cause for respondent Engle Martin & Associates, Inc.
(Gordon Rees Scully Mansukhani, LLP, and Ryan
Sestack, attorneys; Michael J. Neese and Ryan Sestack,
on the brief).

Adam P. Stark argued the cause for respondent Certain
Underwriters at Lloyd's of London (Fleischner Potash,
LLP, attorneys; Adam P. Stark and James P. Ricciardi,
Jr., on the brief).

PER CURIAM

Plaintiff Fedway Associates, Inc. (Fedway) appeals from orders dated May 5, 2017, which denied its motion for summary judgment, and granted summary judgment in favor of defendants Engle Martin & Associates, Inc. (Engle Martin) and Certain Underwriters at Lloyd's of London (Lloyd's). Fedway also appeals from an order dated August 8, 2018, which awarded Lloyd's attorney's fees and costs as sanctions for pursuing frivolous litigation. For the reasons that follow, we affirm the orders granting summary judgment in favor of Engle Martin and Lloyd's, and reverse the order awarding attorney's fees and costs to Lloyd's.

I.

Fedway is one of New Jersey's largest liquor wholesalers and distributors, and at the time relevant to this dispute, Fedway operated its business in office buildings and warehouses in Kearny, which it leased from R.T.C. Properties, Inc. (RTC). On October 29, 2012, Superstorm Sandy struck New Jersey, and the premises suffered significant damage from flooding, which caused Fedway to cease operations for several weeks.

Fedway had a primary layer of flood-loss coverage from Liberty Mutual Insurance (Liberty Mutual), and excess coverage for such losses from other insurers, including Lloyd's. Lloyd's provided the eighth layer of excess

A-0297-18T4

insurance, specifically, $50,000,000 "in excess of separate [p]rimary and/or underlying [e]xcess policy limits amounting to $75,000,000." Fedway's policy with Lloyd's covered stock and inventories, consisting primarily of wine and spirits. Coverage was, however, subject to the terms and conditions of the Liberty Mutual policy.

Fedway submitted a claim to its carriers for the Sandy-related flood losses, and the excess insurers retained Engle Martin to adjust Fedway's claim. Joseph Slane was the Engle Martin adjuster with responsibility for Fedway's claim.

The excess carriers also retained Matson, Driscoll & D'Amico (MDD) to perform an accounting analysis in connection with Fedway's claim. Corporate Risk Management, Inc. (CRM) was Fedway's insurance consultant, and William B. Heeney, a principal of CRM, assisted Fedway with its claim.

RTC retained Engle Martin to assist in the preparation of RTC's insurance claim. RTC was covered under policies issued by Zurich Insurance Group (Zurich), and the National Flood Insurance Program (NFIP). Thomas Tiernan was the Engle Martin adjuster with responsibility for RTC's claim.

In November 2012, Fedway hired Cotton Commercial USA, Inc. (Cotton) to perform certain repair and restoration work at the leased premises, for which Fedway paid Cotton $2,232,203. Fedway submitted a claim for these costs to

its insurers, including Lloyd's. The excess carriers determined that the costs were for building repair and restoration and were not covered under the policies. Cotton itemized the work it had performed for Fedway, and allocated $950,714.11 to the building repair and restoration work (the Cotton Costs).

In May 2014, Fedway and its insurers reached a global settlement, and Fedway agreed to settle its insurance claim for $93,500,000. As part of the settlement, Lloyd's agreed to pay Fedway $16,000,000. On May 19, 2014, Fedway executed a policyholder's release, which discharged Lloyd's from any and all claims and demands for property damage and business income losses arising from Superstorm Sandy.

Thereafter, CRM took steps to recover the Cotton Costs for Fedway. However, in February 2015, RTC settled its insurance claim, and the settlement made no provision for payment of the Cotton Costs. In May 2015, Fedway asked Lloyd's to reopen its claim so that it could include the Cotton Costs. Lloyd's refused.

Fedway asserts that before it settled its claim, Slane and Tiernan repeatedly represented that the Cotton Costs were recoverable under RTC's policies; that RTC had included the Cotton Costs in its claim; and that Fedway would be paid after RTC recovered these costs from its insurers. Fedway asserts

it justifiably relied on these statements. It alleges it later learned that RTC had not included the Cotton Costs in its insurance claim.

In August 2015, Fedway filed a complaint in the trial court naming Engle Martin, Lloyd's, and MDD as defendants, and thereafter, amended the complaint. Fedway alleges it was obligated to repair and restore the leased premises, and the repairs and restoration were necessary to maximize its recovery under the business interruption coverage in its insurance policies.

Fedway claims Engle Martin and MDD decided to apportion the Cotton Costs between Fedway and RTC, and allocated those costs to RTC. Fedway alleges it disagreed with this allocation of the Cotton Costs, but nevertheless acquiesced in the allocation because Engle Martin and MDD were experts in the adjustment and allocation of insurance claims.

Fedway further alleges it relied on representations and omissions by Engle Martin and MDD that RTC would include the Cotton Costs in RTC's insurance claim, and it would be reimbursed for the Cotton Costs from RTC's recovery. Fedway claims that based on those representations and omissions, it agreed to the settlement with Lloyd's and its other insurers, which did not include the Cotton Costs. Fedway alleges that if the Cotton Costs had been allocated to it,

rather than to RTC, it would have included those costs in its claim, and the costs would have been covered under its insurance policies.

Fedway also alleges that Lloyd's acted in bad faith by refusing to reopen the settlement and denying its claim for recovery of the Cotton Costs. Fedway asserts that MDD knew its allocation of the Cotton Costs would be provided to Fedway and that Fedway would rely on that allocation. It alleges that in various communications, MDD advised and directed Fedway not to include the Cotton Costs in its insurance claim.

Based on these allegations, Fedway alleges that Engle Martin and MDD are liable for fraudulent and tortious misrepresentation (count one), and that these defendants are liable because they erroneously allocated the Cotton Costs to RTC (count two). Fedway also alleges that Engle Martin and MDD are liable because they negligently failed to include the Cotton Costs in Fedway's insurance claims (count three).

In addition, Fedway asserts that Engle Martin and MDD breached their fiduciary duties to Fedway (count four), and that Engle Martin and MDD are liable on a theory of detrimental reliance (count five). Fedway further claims Lloyd's is liable for Engle Martin's acts and omissions because Engle Martin

was its agent; and Engle Martin is liable for the acts and omissions of its agent, MDD (count six).

Lastly, Fedway asserts that Lloyd's is liable for breach of contract, breach of the implied covenant of good faith and fair dealing, and the bad faith denial of its claim (count seven). Fedway also claims Lloyd's is liable for unjust enrichment resulting from its refusal to pay the Cotton Costs or their monetary equivalent (count eight).

Engle Martin and Lloyd's thereafter filed motions to dismiss the complaint pursuant to Rule 4:6-2(e), arguing that Fedway failed to assert claims upon which relief could be granted. MDD joined in the motions. After hearing oral arguments, the judge entered orders dated March 24, 2016, and April 20, 2016, which granted the motions in part.

The judge dismissed Fedway's claims for breach of fiduciary duty (count four) and detrimental reliance (count five). The judge also dismissed Fedway's unjust enrichment claim against Lloyd's (count eight), and the portion of count six in which Fedway claims Lloyd's is liable for MDD's acts and omissions. Engle Martin thereafter filed a third-party complaint against RTC, CRM, and Heeney.

A-0297-18T4

In February 2017, Fedway filed a motion seeking summary judgment on all remaining counts, except the bad faith claim in count seven. Engle Martin, Lloyd's, and MDD also filed motions for summary judgment. After hearing oral arguments, the judge placed his decision on the record on April 13, 2017, and May 5, 2017. The judge denied Fedway's motion and granted summary judgment in favor of Engle Martin, Lloyd's, and MDD. The judge entered orders dated May 5, 2017, which memorialized his decision.

On May 25, 2017, Lloyd's filed a motion under N.J.S.A. 2A:15-59.1 and Rule 1:4-8 for frivolous litigation sanctions. Fedway and its attorneys opposed the motion. The judge heard oral arguments on August 28, 2017, and placed his decision on the record. The judge granted Lloyd's motion, finding that Lloyd's was entitled to the attorney's fees and costs it incurred from December 14, 2016, to the date of the court's decision.

The judge directed Lloyd's attorneys to submit a certification of fees and costs, and afforded Fedway an opportunity to object to the amounts claimed. On August 8, 2018, the judge entered an order awarding Lloyd's $45,207 in attorney's fees and $3501.38 in litigation expenses.

Fedway appeals and argues: (1) the trial court erred by granting summary judgment to Lloyd's and Engle Martin based on Fedway's release because there

is a genuine issue of material fact as to whether the release was the product of fraud; (2) even if the release is enforceable against Lloyd's, it is not enforceable against Engle Martin; (3) the trial court erred by granting summary judgment to Engle Martin and Lloyd's on the fraud and negligence claims; and (4) the court erred by awarding Lloyd's attorney's fees and costs. Fedway does not challenge the dismissal of its claims against MDD.

## II.

When reviewing an order granting summary judgment, we "employ[] the same standards governing the trial court." Lee v. Brown, 232 N.J. 114, 126 (2018) (citing Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 349-50 (2016)). Rule 4:46-2(c) states that summary judgment should be granted where the motion record "show[s] that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."

The rule also states that "[a]n issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." Ibid. Furthermore, "[i]f there exists a single, unavoidable resolution of the alleged

disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact for purposes of Rule 4:46-2." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).

III.

We first consider Fedway's contention that the trial court erred by granting summary judgment to Lloyd's on the basis of the release that Fedway executed resolving its insurance claim. Fedway argues there are "myriad issues of material fact" that underlie its allegations of fraud, which should have precluded the grant of summary judgment. We disagree.

It is well established that under New Jersey law, a release is binding unless shown to be the product of "fraud, misrepresentation or overreaching by the releasee . . . ." Raroha v. Earle Finance Corp., 47 N.J. 229, 234 (1966). "[W]here a party is induced to sign a release by reason of a misrepresentation intended to deceive him as to its purport or content, the signer has [the] right to [act upon] such fraud or imposition in avoidance of such release . . . ." Peter W. Kero, Inc. v. Terminal Const. Corp., 6 N.J. 361, 369 (1951).

Here, Fedway alleges that Engle Martin, as Lloyd's agent, made material misrepresentations of fact that induced it to execute the release and thereby

forfeit recovery of the Cotton Costs. According to Fedway, Engle Martin's representatives repeatedly assured it that the Cotton Costs were recoverable under RTC's insurance policies; that the Cotton Costs would be included in RTC's insurance claim, and that Fedway would be reimbursed after RTC recovered these costs from its insurers.

We are convinced, however, that Fedway failed to present evidence to support a claim of fraud with regard to the execution of the release. The record establishes that Fedway was well aware that it was settling all of its insurance claims for Sandy-related flood losses, and that the Cotton Costs would not be included in that settlement. Fedway also was well aware that the release would bar any further claims against its insurers, including Lloyd's, for Sandy-related flood losses.

In addition, the record establishes that before it entered into the settlement, Fedway was informed that it had to seek recovery of the Cotton Costs from RTC and RTC's insurers, and that Fedway's carriers would not agree to make the settlement of Fedway's claim contingent upon Fedway's recovery of these costs. Moreover, before the settlement, Heeney told Richard Leventhal, Fedway's Chairman and Chief Executive Officer, and Robert Sansone, Fedway's

12

Executive Vice President, that Fedway had a "legitimate, recoverable claim," which CRM would pursue on Fedway's behalf.

The record therefore supports the trial court's determination that Fedway's release barred Fedway from asserting a claim against Lloyd's for recovery of the Cotton Costs. As the court determined, Fedway failed to present sufficient evidence to show it was induced to sign the release due to a misrepresentation, which was intended to deceive Fedway as to the meaning or content of the release.

## IV.

Fedway next argues that the trial court erred by granting summary judgment to Engle Martin and Lloyd's on Fedway's claims of common law fraud and negligent misrepresentation. Again, we disagree.

### A. Fedway's Common Law Fraud Claims

The elements of common law fraud are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Banco Popular N. Am. v. Gandi, 184 N.J. 161, 172-73 (2005) (quoting Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997)). "[P]laintiff must prove each element by

'clear and convincing evidence.'" DepoLink Court v. Rochman, 430 N.J. Super. 325, 336 (App. Div. 2013) (citing Stochastic Decisions, Inc. v. DiDomenico, 236 N.J. Super. 388, 395 (App. Div. 1989)).

In support of its common law fraud claims, Fedway cited: (1) Slane's statements that the Cotton Costs were not compensable under Fedway's insurance policies, and that he intended to allocate those costs to RTC's insurance claim; (2) representations by Engle Martin's representatives that they intended to include the Cotton Costs in RTC's insurance claim; (3) MDD's spreadsheet, which apparently shows an allocation of the Cotton Costs to RTC; (4) Tiernan's email to Eric Little at CMA in which he stated he was "preparing a schedule that will apply the costs to RTC's specific buildings and show the breakdown that we think RTC owes to Fedway"; and (5) a May 2014 email from Tiernan to Slane in which Tiernan stated that he had allocated the Cotton Costs to certain buildings, and RTC would have to look to NFIP for reimbursement of the Cotton Costs that did not exceed RTC's deductible.

We note initially that any statements as to whether the Cotton Costs were covered under Fedway's or RTC's insurance policies are opinions, not statements of fact. Generally, such statements cannot form the basis of a fraud claim. See

14

Suarez v. E. Int'l Coll., 428 N.J. Super. 10, 29 (App. Div. 2012) (citing Daibo v. Kirsch, 316 N.J. Super. 580, 589 (App. Div. 1998)).

Furthermore, a claim for common law fraud "must relate to a present or preexisting fact and cannot ordinarily be predicated on representations [that] involve things to be done in the future." Anderson v. Modica, 4 N.J. 383, 391-92 (1950) (citing Arnold v. Hagerman, 45 N.J. Eq. 186, 195 (E. & A. 1888); Halpern v. Cafarelli, 98 N.J.L. 77, 79 (Sup. Ct. 1922); 23 Am. Jur. Fraud & Deceit § 35). Statements as to actions Engle Martin, Slane, or Tiernan intended to take in the future regarding the Cotton Costs are not actionable because they were not statements of a presently existing or past fact.

We note, however, that "a present intention to act or not act in the future" can constitute an actionable misrepresentation if the person making the representation did not intend to act, or not act, when the statement was made. Stochastic Decisions, 236 N.J. Super. at 395-96 (citing Van Dam Egg Co. v. Allendale Farms, Inc., 199 N.J. Super. 452, 457 (App. Div. 1985) ("A promise to pay in the future is fraudulent if there is no present intent ever to do so.")).

Here, Fedway did not present sufficient evidence to show that when Engle Martin's representatives stated they would allocate the Cotton Costs to RTC, they did not intend to do so. Fedway argues that such an inference can be drawn

because ultimately, RTC did not include the Cotton Costs in its insurance claim; however, the fact that RTC did not assert a claim for the Cotton Costs does not show that Engle Martin or its representatives did not intend to allocate these costs to RTC, when they stated that they intended to do so.

Fedway also argues that an email from Tiernan to Slane, dated April 25, 2014, establishes that Engle Martin and its representatives knew their statements, that Fedway could recover the Cotton Costs from RTC, were false. In his email, Tiernan asked Slane for additional information regarding the Cotton Costs "to 1) determine what building the Cotton [C]osts are allocated to and 2) additional details for what the costs are for." Tiernan stated that RTC "is adamant that the costs are for non-building items, but until we see the further detail I don't think that conclusion can be drawn."

Fedway asserts this email shows that Tiernan knew that RTC had taken the position that it was only responsible for building-related costs and that the Cotton Costs were not building-related. Fedway therefore asserts that Tiernan knew RTC did not intend to include the Cotton Costs in its insurance claim and would not reimburse Fedway for these costs.

We are convinced, however, that the email does not support the conclusion that Engle Martin and its representatives knew their statements about the Cotton

Costs were false. As we have explained, in the email, Tiernan stated that the coverage issues could not be conclusively resolved without further information. Thus, Fedway failed to establish that Engle Martin knew, when Tiernan wrote the email on April 25, 2014, that RTC would not include the Cotton Costs in its insurance claims.

Fedway also failed to establish that it justifiably relied upon Engle Martin's representations regarding the Cotton Costs when it settled its claim and executed the release. A plaintiff's reliance on an alleged misrepresentation "must be actual, as well as justifiable." Walid v. Yolanda for Irene Couture, Inc., 425 N.J. Super. 171, 181-82 (App. Div. 2012).

Here, the record shows that before Fedway settled its claim, Slane advised Fedway that Fedway's and RTC's claims were separate, and that he had no control over RTC's claim or what RTC included in its claim. As Engle Martin points out, Fedway had a longstanding relationship with RTC and could readily have asked whether it would include the Cotton Costs in its insurance claim.

Moreover, in an email dated May 5, 2014, Heeney told Leventhal and Sansone that "the best that we can do at this point is to accept [the insurers'] proposed settlement and then aggressively go after RTC." Based on that communication and the other information provided to it, Fedway could not

justifiably assume that RTC would include the Cotton Costs in its insurance claim, or that Fedway would recover those costs from RTC and RTC's insurers.

Thus, the trial court did not err by granting summary judgment to Engle Martin and Lloyd's on Fedway's fraud claims.

B.  Fedway's Claims of Negligent Misrepresentation

We reach the same conclusion regarding Fedway's claims against Engle Martin and Lloyd's based on Engle Martin's alleged negligent misrepresentations.  "Negligent misrepresentations are quite closely related to equitable and legal fraud."  McClellan v. Feit, 376 N.J. Super. 305, 317 (App. Div. 2005).

"A 'negligent misrepresentation constitutes [a]n incorrect statement, negligently made and justifiably relied on, [and] may be the basis for recovery of damages for economic loss . . . sustained as a consequence of that reliance.'" Singer v. Beach Trading Co., Inc., 379 N.J. Super. 63, 73-74 (App. Div. 2005) (quoting McClellan, 376 N.J. Super. at 317).  A claim of negligent misrepresentation must, however, be based on a misrepresentation of a presently existing or past fact.  See Masone v. Levine, 382 N.J. Super. 181, 187 (App. Div. 2005).

Engle Martin argues that Fedway's claim of negligent misrepresentation fails as a matter of law because it did not owe Fedway a duty of care; however, we need not decide that issue. Even assuming Engle Martin owed Fedway a duty to exercise reasonable care with regard to the representations it made concerning Fedway's insurance claim, Fedway has not shown that Engle Martin negligently made statements of any presently existing or past fact regarding Fedway's claim. Fedway also failed to establish that it justifiably relied on Engle Martin's alleged negligent misrepresentations when it settled its insurance claim.

Therefore, the trial court correctly determined that Engle Martin and Lloyd's were entitled to summary judgment on Fedway's claims based on Engle Martin's alleged negligent misrepresentations.

V.

Fedway also argues the trial court erred by granting summary judgment to Engle Martin and Lloyd's on its negligence claims. As noted, Engle Martin acted as the independent claims adjuster for Lloyd's and Fedway's other excess carriers with regard to Fedway's claim for the Sandy-related flood losses. Fedway alleges that Engle Martin negligently failed to allocate the Cotton Costs to Fedway's insurance claim. Fedway further alleges that Engle Martin and Lloyd's are liable for Engle Martin's negligence.

19

A negligence action consists of four elements: "(1) [a] duty of care, (2) [a] breach of [that] duty, (3) proximate cause, and (4) actual damages . . . ." Brunson v. Affinity Fed. Credit Union, 199 N.J. 381, 400 (2009) (alterations in original) (quoting Polzo v. Cty. of Essex, 196 N.J. 569, 584 (2008)). The threshold inquiry of whether the defendant owed the plaintiff a duty of care is generally a question of law. Carvalho v. Toll Bros. & Developers, 143 N.J. 565, 572 (1996).

As Fedway notes, neither this court nor our Supreme Court has addressed the question of whether an independent insurance adjuster owes a duty of care to an insured with regard to the adjustment of the insured's claim. A majority of the courts that have addressed this issue have concluded that an independent insurance adjuster does not owe such a duty to the insured. See Lodholtz v. York Risk Servs. Grp., Inc., 778 F.3d 635, 641 n.11 (7th Cir. 2015).

However, we need not decide this issue. Even assuming Engle Martin owed Fedway a duty to exercise reasonable care in the adjustment of Fedway's insurance claim, Fedway failed to present sufficient evidence to establish that Engle Martin breached that duty.

Here, the motion judge decided that Engle Martin and Lloyd's were entitled to summary judgment on the negligence claims because Fedway failed

to provide expert testimony to support these claims. The judge observed that, "[t]he adjustment of an insurance claim such as this[,] which involves one primary layer of coverage plus eight additional layers of excess coverage, is a complex subject matter that is beyond the ken of the average juror."

"[E]xcept for malpractice cases, there is no general rule or policy <u>requiring</u> expert testimony as to the standard of care." <u>Butler v. Acme Markets, Inc.</u>, 89 N.J. 270, 283 (1982). "The test of need [for] expert testimony is whether the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the party was reasonable." <u>Ibid.</u>

Fedway argues that expert testimony is ordinarily required only in cases involving professional malpractice. However, expert testimony has been required in other contexts. <u>See</u> <u>Davis v. Brickman Landscaping, Ltd.</u>, 219 N.J. 395, 408 (2014) (expert testimony required in case involving the inspection of fire suppression system and an expert in fire prevention engineering was required "to explain New Jersey's complex regulatory scheme as well as the role that fire sprinkler inspectors properly play amidst that system").

Here, the trial court correctly determined that expert testimony was required to support Fedway's negligence claims. As the motion judge pointed

out, in this case, a jury would have to determine the applicable standard of care and whether Engle Martin unreasonably deviated from that standard in its adjustment of Fedway's insurance claim.

To resolve those issues, a jury would have to consider Fedway's complex insurance scheme, and whether the Cotton Costs were covered under the policies. The jury also would have to understand the role of an independent claims adjuster and the manner in which an adjuster allocates costs between multiple insurance policies.

These considerations are "so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the party was reasonable." See Butler, 89 N.J. at 283. Without an expert to assist them, the jurors would be left to speculate as to whether Engle Martin unreasonably breached a duty owed to Fedway. See Davis, 219 N.J. at 407 (citing Torres v. Schripps, Inc., 342 N.J. Super. 419, 430 (App. Div. 2001)).

The trial court correctly found that because Fedway failed to present expert testimony to support its negligence claims, Engle Martin and Lloyd's were entitled to summary judgment on these claims.

## VI.

We turn to Fedway's argument that the trial court erred by awarding Lloyd's attorney's fees and costs as sanctions for pursuing frivolous claims. "We review the trial judge's decision on a motion for frivolous lawsuit sanctions under an abuse of discretion standard." Bove v. AkPharma Inc., ___ N.J. Super. ___, ___ (App. Div. 2019) (slip op. at 23) (citing McDaniel v. Man Wai Lee, 419 N.J. Super. 482, 498 (App. Div. 2011)).

"Sanctions for frivolous litigation against a party are governed by . . . N.J.S.A. 2A:15-59.1[,]" the Frivolous Litigation Statute (FLS). Ibid. The FLS provides in pertinent part that in a civil action, a prevailing party "may be awarded all reasonable litigation costs and reasonable attorney fees, if the judge finds at any time during the proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous." N.J.S.A. 2A:15-59.1(a)(1).

The FLS states that a pleading is frivolous if it "was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury[,]" N.J.S.A. 2A:15-59.1(b)(1); or "[t]he nonprevailing party knew, or should have known, that the complaint, counterclaim, cross-claim or defense was without any reasonable basis in law or equity and could not be supported

23

by a good faith argument for an extension, modification or reversal of existing law." N.J.S.A. 2A:15-59.1(b)(2).

Where "a prevailing defendant's allegation is based on the absence of a 'reasonable basis in law or equity' for the plaintiff's claim and the plaintiff is represented by an attorney, an award cannot be sustained if the 'plaintiff did not act in bad faith in asserting' or pursuing the claim." Ferolito v. Park Hill Ass'n, 408 N.J. Super. 401, 408 (App. Div. 2009) (quoting McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 549 (1993)). A finding of bad faith is essential because "clients generally rely on their attorneys 'to evaluate the basis in law or equity of a claim or defenses,' and 'a client who relies in good faith on the advice of counsel cannot be found to have known that his or her claim or defense was baseless.'" Ibid. (quoting McKeown-Brand, 132 N.J. at 557-58).

Furthermore, under the FLS, the party seeking the imposition of sanctions "bears the burden of proving that the non-prevailing party acted in bad faith." McKeown-Brand, 132 N.J. at 559. We have held that "a grant of a motion for summary judgment in favor of a [prevailing party], without more, does not support a finding that the [non-prevailing party] filed or pursued the claim in bad faith." Bove, ____ N.J. Super. ____ (slip op. at 31) (alterations in original) (quoting Ferolito, 408 N.J. Super. at 408).

Rule 1:4-8, by contrast, applies to attorneys and pro se litigants. Toll Bros., Inc. v. Twp. of West Windsor, 190 N.J. 61, 69 (2007). The rule provides in pertinent part:

> (a) The signature of an attorney or pro se party constitutes a certificate that the signatory has read the pleading, written motion, or other paper. By signing, filing or advocating a pleading, written motion, or other paper, an attorney or pro se party certifies that to the best of his or her knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) the paper is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the factual allegations have evidentiary support or, as to specifically identified allegations, they are either likely to have evidentiary support or they will be withdrawn or corrected if reasonable opportunity for further investigation or discovery indicates insufficient evidentiary support . . . .
>
> [R. 1:4-8.]

In addition, Rule 1:4-8(b)(1) states that a party seeking attorney's fees must send opposing counsel a letter setting forth the bases for believing the

25

paper to be frivolous. The letter must demand the paper be withdrawn, and give notice that a motion for attorney's fees and costs will be made if the paper is not withdrawn within twenty-eight days after service of the letter. Ibid. The procedures in Rule 1:4-8 apply to parties under N.J.S.A. 2A:15-59.1 "to the extent practicable . . . ." R. 1:4-8(f).

Here, the record shows that Lloyd's attorneys sent Fedway's counsel a letter dated November 16, 2016, stating that Fedway's complaint was frivolous because the release precluded Fedway from asserting any causes of action against Lloyd's. Lloyd's attorneys also stated that Fedway's fraud claims were unsustainable because Fedway's representatives had acknowledged the Cotton Costs were not recoverable from Lloyd's. Fedway's counsel did not withdraw the complaint.

Consequently, Lloyd's filed a motion for attorney's fees and costs under the FLS and Rule 1:4-8. Fedway opposed the motion. Sansone submitted a certification, in which he stated that "Fedway believed in good faith of the merits of the claims it asserted when it filed the lawsuit and of the merits of claims throughout the litigation." Fedway's attorneys also opposed the motion, asserting they believed Fedway's claims had merit.

The motion judge found Fedway's claims against Lloyd's were frivolous because Fedway "knew or should have known that the claims were without any reasonable basis of law or equity and could not be supported by a good faith argument of the extension, modification, or reversal of existing law." The judge reasoned that Fedway knew it would have to seek to recover the Cotton Costs from RTC, and that Lloyd's would not permit the settlement to be contingent upon Fedway's recovery of the Cotton Costs from RTC.

The judge therefore found that Fedway was fully aware before it executed the settlement that the Cotton Costs were not included and "they would not come from Lloyd's." The judge did not state, however, whether he was granting Lloyd's motion pursuant to the FLS or Rule 1:4-8.

Even so, the order of August 8, 2017, makes clear that the court awarded counsel fees and costs pursuant to the FLS, not Rule 1:4-8. The order imposes sanctions on Fedway, not its attorneys. The FLS authorizes the court to impose attorney's fees and costs upon a party for frivolous litigation. See Bove, ____ N.J. Super. ____ (slip op. at 23). That is what occurred here.

As we have explained, the trial court could not assess attorney's fees and costs against Fedway pursuant to the FLS unless it found that Fedway pursued its claims against Lloyd's in bad faith. See Ferolito, 408 N.J. Super. at 408

(quoting McKeown-Brand, 132 N.J. at 549). The judge did not make that necessary finding. Moreover, Lloyd's failed to show that Fedway pursued the claims against Lloyd's in bad faith. Although the trial court judge granted Lloyd's motion for summary judgment, that is not a sufficient basis for imposing attorney's fees and costs under the FLS. See Bove, ____ N.J. Super. ____ (slip op. at 31).

We conclude the award of attorney's fees and costs to Lloyd's under the FLS was a mistaken exercise of discretion.

Therefore, the orders of May 5, 2017, granting summary judgment in favor of Engle Martin and Lloyd's are affirmed, and the order dated August 8, 2017, awarding Lloyd's frivolous litigation fees and costs is reversed.

Affirmed in part and reversed in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0297-18T4